IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN PRESIDENT LINES, LLC, APL MARITIME, LTD., APL MARINE SERVICES, LTD., <br><br> Plaintiffs, <br><br> v. <br><br> MATSON NAVIGATION COMPANY, INC., MATSON LOGISTICS, INC., <br><br> Defendants. | No. 1:21-cv 2040-CRC |

## JOINT NOTICE REGARDING DISCOVERY DISPUTE

Pursuant to the Court's order on September 11, 2023, Plaintiffs American President Lines, LLC, APL Maritime Ltd., and APL Marine Services Ltd. ("APL") and Defendants Matson Navigation Company, Inc. and Matson Logistics, Inc. ("Matson," and together with APL, the "Parties"), by and through their undersigned counsel, respectfully submit the following Joint Notice.

## APL's Position

Matson's demand for APL to search the files of three (3) former and one (1) current employee should be rejected—APL already searched and produced documents of 26 employees and produced 13.76 million pages of documents (approximately 3 times Matson). Contrary to the Parties' practice, Matson also is refusing to search for relevant documents of its own employees, while asserting superficial reasons for demanding that APL search even more of its employees. In that context, Matson's demand is disproportionate, as it has not shown need for APL to search the files of these four additional custodians when APL's existing production already provides Matson 85,682 documents involving them.

The Parties agreed to confer on custodians to be searched. *See* Dkt. 42 at IV.B. In practice, until now, APL would agree to add custodians if Matson reciprocated. But now, Matson is insisting that APL add four unnecessary custodians, while Matson is refusing to add custodians requested by APL including Matson's Guam sales manager Tasi Peddicord and internal auditor Jie Deng. In fact, APL has agreed to search the files of *every* custodian requested by Matson throughout the litigation, until Matson's current lopsided demand. In contrast, Matson has refused to search multiple custodians requested by APL, 1/13/23 Brass Ltr. (refusing Rusty Rolfe, Jerome Holland, Qiang Gao, Michael Pantaleon); 8/14/23 Salant Email (refusing Jie Deng), or Matson has demanded unreasonable preconditions, *id.* (conditioning limited production for Ms. Peddicord on APL adding four (4) more custodians) or, emboldened by its belief that the Court "blessed" Matson's unilateral use of incomplete search terms to restrict documents produced, Matson has provided increasingly deficient productions of documents for the custodians it agreed to add, *id.* (referring to Linda Ramos, for whom Matson used undisclosed search terms to produce only 221 custodial documents).

Matson has established no good reason for APL to search the files of the four additional custodians demanded by Matson (while refusing to add its relevant employees as custodians):

- Tom Colson is a former APL employee who, from 2017 into 2020, worked in Hawaii as APL's sales and pricing manager for international shipments, *i.e.*, shipments not involving the U.S. mainland or Guam or Hawaii trades at issue. He departed APL more than a year before this litigation began and APL is unaware of litigation holds on his documents. Matson's cursory argument that he "worked in sales" is insufficient, considering Matson has 20+ sales personnel in Hawaii and none is a custodian.[1]

- Lars Kastrup is a former employee of Singapore-based APL entities other than Plaintiffs, and was the president of a related APL entity during August 2016 to July 2017. He departed more than six (6) years before this litigation began and APL is unaware of litigation holds on his documents. Matson's exaggerated assertion that he is a "material witness" is premised on APL's interrogatory responses identifying Mr. Kastrup as one of several persons having knowledge about APL's complaint statements regarding Pasha. The other three are APL custodians who are scheduled to be deposed by Matson.

- Chad Ballard is a former employee who, from 2016 through 2020, worked as APL's Director of Key Accounts. Matson's assertion that he is a "material witness" is another exaggeration, premised on APL's interrogatory responses identifying Mr. Ballard as one of

---

[1] Matson cited a single unremarkable document which is nowhere close to the significance of Matson's internal audit documents that analyzed Matson's termination of GTW, the service provider APL alleges was terminated in retaliation—and Matson argued that even those extremely relevant documents were not enough reason for Matson to search its audit employee (Jie Deng) as an additional custodian.

2

the APL persons who communicated with a potential APL customer. Those communications (emails) have been produced to Matson. Mr. Ballard departed APL more than a year before this litigation began and APL is unaware of litigation holds on his documents.

- Adam Peterson has been APL's director of business development since 2017, and prior was APL's director for key accounts. In those positions he was responsible for the development of shipping customer accounts for APL. Matson's reliance on APL's interrogatory responses identifying Mr. Peterson as one of the APL persons who communicated with a potential APL customer is insufficient for adding him as a custodian, particularly when those communications (emails) have been produced to Matson. APL has preserved Mr. Peterson's files for this litigation.

The former employee files (Messrs. Colson, Kastrup, and Ballard) have been held in two separate archive repositories, one with the files APL recovered following a cyberattack in 2018, and the other with files from 2018 until their departures. As APL has explained to Matson, these repositories would need to be restored in order to ascertain what files they contain.[2] APL's vendors estimate $10,000, plus 20 hours of technician time, to access the repositories to see what they contain—which might turn out to be only a few documents due to the cyberattack.

As compromise, APL has offered to add some of the four custodians, or to search a repository of Matson's choosing, if Matson agrees to add custodians, specifically Peddicord, who drafted Matson's strategy for APL's Guam Entry and Deng, who collected information in 2019 on Matson's retaliatory termination of GTW alleged in the Complaint. But Matson has rejected all

---

[2] Matson has inaccurately accused APL of "purging" files of these former employees. Contrary to Matson's accusations, following the 2018 cyberattack, APL attempted to recover the working files of its then-current employees. APL believes it has retained whatever files were recovered and in existence at the time of the departure of these former employees, who were under no litigation hold obligation.

3

compromise, as it is unwilling to disclose its relevant documents about its termination of GTW (Deng) or its strategies with respect to APL's Guam Entry (Peddicord). If the Court were inclined to make APL add custodians, APL requests that Deng and Peddicord be added for Matson.

Matson has shown no reason to conclude that more APL documents are needed—especially in light of Matson's recent argument to the Court that "perfection" is not required, and that producing only 70% of Matson's "responsive" documents (*e.g.*, those hit by its incomplete set of search terms) would provide sufficient documents for APL. Finally, Matson already has exhausted nearly all its available depositions for the limited discovery period remaining, so it is not clear what the addition of these custodians would accomplish, other than imposing additional burden on APL.

### MATSON'S POSITION

Matson requests that the Court order APL to produce responsive documents from the files of four senior APL employees: (1) APL's former CEO Lars Kastrup; (2) APL's Director of Business Development Adam Peterson; (3) APL's Director of Global/Strategic Accounts Chad Ballard; and (4) APL's former Manager of Hawaii Sales and Pricing Robert "Tom" Colson. APL did not timely disclose that these custodians were relevant to the litigation; Matson asked that APL add them as custodians once they were disclosed and has diligently pursued them since. APL has vacillated on the availability of their files, refusing to respond to questions about what materials were preserved, and ignored Matson's offer to use search terms to reduce any burden on APL.[3]

**The Parties' Process for Custodian Selection.** Between December 2022 and February 2023, each party agreed to approximately 25 custodians through a process in which each party

---

[3] In contrast, in August 2023, Matson agreed to search the files of two additional Matson custodians APL identified, using search terms keyed to the reasons APL claimed these custodians were relevant.

4

proposed custodians and the other side requested additions. In requesting APL custodians, Matson relied on APL's initial disclosures, organization charts, and information disclosed in the meet-and-confer process. Because APL refused to include former employees in its Rule 26 disclosures, Matson sought the identity of witnesses to various allegations in APL's complaint through interrogatories; APL did not begin providing that information until June 19, 2023, however, after Matson had successfully moved to compel multiple times.

    **1. Lars Kastrup.** Mr. Kastrup was APL's CEO from at least August 2016 to August 2017. This was a critical time: APL entered the Guam trade in January 2016 and shifted to a two-vessel service in January 2017—a transition APL claims made it more competitive and caused Matson to retaliate. Mr. Kastrup's custodial file should shed light on the bases of APL's competitive decisionmaking—including its contemporaneous understanding of competition in the Guam trade, and APL's challenges gaining traction with customers. APL first resisted producing these documents by insisting that Mr. Kastrup was the CEO of a different entity called "APL"—even though CMA CGM's Chairman Rodolphe Saade wrote, "Lars Kastrup was CEO of APL USA between August 2016 and August 2017," APL004538298, and emails show Mr. Kastrup directed Plaintiff APL in the Guam trade during his CEO tenure. *E.g.* APL005168726; APL012641396.

    Despite his evident significance, Mr. Kastrup was not named in APL's initial disclosures of November 18, 2022, November 29, 2022, or January 3, 2023. Nor did he appear in the organizational charts APL produced. APL first disclosed Mr. Kastrup in its June 19, 2023 supplemental interrogatory responses as knowledgeable about "APL's complaint statement regarding Pasha"—the Jones Act carrier that allegedly "declined to partner with APL" in Hawaii "due to a concern of adverse reaction by Matson." Am. Compl. ¶ 53. Matson asked for Mr. Kastrup as a custodian shortly thereafter and has reiterated its request six times since.

5

**2. Adam Peterson.** Mr. Peterson appears in APL's organization charts as a "Director of Business Development" in APL's Government Trade unit. That did not bespeak direct relevance to this case, and APL *removed* Mr. Peterson from its initial disclosures on January 3, 2023 because, it said, he did not have any responsive information. Matson relied on that representation in negotiating custodians. But APL's June and August supplementary interrogatory responses identified Mr. Peterson as knowledgeable about "APL's complaint statements regarding Matson's anticompetitive conduct in Guam, Hawaii, or Alaska" (*i.e.*, every trade APL has put at issue) and said he communicated with Macy's regarding Matson's alleged "threats"—conduct the Court recognized as the "meat and potatoes" of APL's case. Discovery also revealed that Mr. Peterson oversaw APL's extensive efforts to solicit military shipping to Guam and supervised Mr. Stefanik, who had pricing authority for the Guam trade. *See* APL013533021; Stefanik Dep. Tr. 13:9–10.

Here too, Matson promptly requested APL add Mr. Peterson following the June 19 disclosure. APL said during a July 14 meet-and-confer call that it had found Mr. Peterson's documents; it then confirmed in writing that it would add Mr. Peterson as a custodian. In the subsequent seven weeks, APL has produced no documents from Mr. Peterson's custodial files.

**3. Chad Ballard.** Mr. Ballard, a former employee, appears to be the APL employee who handled Home Depot during the relevant time period. Home Depot is one of the largest shipping customers on Guam, and APL alleges that Matson anticompetitively foreclosed competition for their business. Mr. Ballard appears on APL's org charts—but without any title. He was not in APL's initial disclosures, and instead first identified in its June 2023 interrogatory responses as knowledgeable about "APL's complaint statements regarding shippers and freight forwarders." Matson requested Mr. Ballard as a custodian within days and followed up repeatedly. APL first said that it had Mr. Ballard's documents and was open to adding him as a custodian. But it then

6

reversed course, telling Matson that it would be too burdensome to restore and search the documents—without explaining why his documents would need to be "restored," why they would be particularly burdensome to search, and whether he got a preservation notice in this litigation.

**4. Robert "Tom" Colson.**  Mr. Colson, also omitted from APL's initial disclosures, was APL's Manager of Hawaii Sales and Pricing from around 2017 through 2020.  Discovery shows he played a highly relevant role in APL's Hawaii business: For example, he helped assemble "Customer Battle Plans" outlining APL's strategy for winning business from Matson in Hawaii. APL000429856.  This is important because APL alleges Matson unlawfully monopolizes the Hawaii trade and unlawfully ties Hawaii and Guam shipments.  Am. Compl. ¶¶ 7, 9, 37, 43–51. Starting in March 2023, Matson has sent *ten* emails and letters seeking documents from Mr. Colson.  APL has alternatively responded that Mr. Colson's documents were purged or that they are available but too burdensome to collect.

**Collection Burden.**  Matson asked APL to substantiate the claimed burden to collect these individuals' documents, including to inform Matson when each custodian left APL, when APL issued litigation holds and whether a custodian's documents was preserved or purged.[4]  APL ignored these questions, saying on August 8 only that it would cost "at least $10,000 in vendor costs" and "20 hours of APL IT time" to retrieve the documents of Messrs. Kastrup, Ballard, and Colson. Matson replied that it believed that this burden was proportional in light of the importance of the documents and the millions of dollars APL's lawsuit has cost both sides in fees and costs.  APL never responded.

---

[4] Deponents have testified APL "engaged a law firm to punch back with an anticompetitive suit" no later than November 27, 2020.  Mensing Dep. Tr. 271:16–19.

Dated:   September 14, 2023

*/s/ Rachel S. Brass*

Rachel S. Brass, *pro hac vice*
RBrass@gibsondunn.com
Julian Wolfe Kleinbrodt, *pro hac vice*
JKleinbrodt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105
(415) 393-8200

Matthew S. Rozen, DC Bar No. 1023209
MRozen@gibsondunn.com
Amalia Reiss, DC Bar No. 241775
AReiss@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500

David Salant, *pro hac vice*
DSalant@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000

*Counsel for Defendants Matson Navigation Company, Inc. and Matson Logistics, Inc.*

Respectfully submitted,

*/s/ John R. Fornaciari*

John R. Fornaciari (DC Bar 152801)
Danyll Foix (DC Bar 475503)
Sally Qin (DC Bar 1011432)
BAKER & HOSTETLER LLP
1050 Connecticut Ave., NW, Suite 1100
Washington, DC 20036-5403
Tel: 202.861.1500
Fax: 202.861.1783
Email: JFornaciari@Bakerlaw.com
DFoix@Bakerlaw.com
SQin@Bakerlaw.com

*Counsel for Plaintiffs American President Lines, LLC, APL Maritime, Ltd., and APL Marine Services Ltd.*

8