IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN PRESIDENT LINES, LLC, APL MARITIME, LTD., APL MARINE SERVICES, LTD., <br><br> Plaintiffs, <br><br> v. <br><br> MATSON NAVIGATION COMPANY, INC., MATSON LOGISTICS, INC., <br><br> Defendants. | No. 1:21-cv-2040-CRC |

### DEFENDANTS' OPPOSITION TO APL'S AND HERMOSA'S MOTIONS TO MAINTAIN SEALED MATERIALS

Plaintiffs American President Lines, LLC, APL Maritime, Ltd., and APL Marine Services, Ltd. (collectively, "APL") filed this lawsuit, publicly accusing Defendants Matson Navigation Company, Inc. and Matson Logistics, Inc. (together, "Matson") of antitrust violations in the U.S.-Guam ocean cargo shipping market. As Matson showed in its motion for summary judgment and *Daubert* motion, APL has *no* competent evidence to support its claims. APL's vast over-designation of testimony and years-old documents serves only to obscure the full scope of APL's competitive failures. To name but one example, APL designated as "Highly Confidential – Attorneys' Eyes Only" many documents in which APL and its customers admitted that APL's service, and not Matson, is the reason that APL has a lower market share in the U.S.-Guam trade than it would like. Dkt. 107-2 ¶¶ 26–77. Now, APL and its former General Manager in Guam, Charlie Hermosa, seek to keep completely under seal 273 exhibits filed by Matson in support of its motions. Their motions should be denied.

Mr. Hermosa does not even make an argument under the relevant standard laid out in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980), claiming only that the exhibits should

1

be maintained under seal because they contain materials designated as "Confidential" or "Highly Confidential – Attorneys' Eyes Only" pursuant to the parties' Stipulated Protective Order (Dkt. 41) ("Protective Order").  See Dkt. 132.  This is not sufficient.  See In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Pracs. Litig., 316 F. Supp. 3d 455, 465 (D.D.C. 2018) (party failed to "carry [its] burden under Hubbard" because it "ma[d]e only conclusory arguments about the proprietary nature of the redacted information").  The "law presumes that the public is entitled to access the contents of judicial proceedings." United States v. ISS Marine Servs., Inc., 905 F. Supp. 2d 121, 140–41 (D.D.C. 2012).  Neither APL nor Mr. Hermosa have established a basis to overcome that presumption, nor have they demonstrated the requisite "*absence* of a need for public access" to the exhibits.  Id. at 141 (emphasis in original).  That is particularly problematic where, as here, documents will form the basis of the Court's ruling on a case-dispositive motion.  Berliner Corcoran & Rowe LLP v. Orian, 662 F. Supp. 2d 130, 133 (D.D.C. 2009).  APL and Mr. Hermosa have not carried their burden and their motions should be denied.

## BACKGROUND

Since the beginning of discovery, APL has designated nearly every single document it produced as "Highly Confidential – Attorneys' Eyes Only."  Prior to filing its summary judgment and *Daubert* motions, Matson challenged many of APL's designations under the parties' Protective Order, informing APL that Matson believed that the standard for designation had not been met.  Matson similarly challenged Mr. Hermosa's designation of exhibits.

More than two weeks after Matson first challenged APL's confidentiality designations, APL de-designated some deposition testimony and four documents produced by its former employee, John Selleck.  Dkt. 133 at 3.  APL did not otherwise address Matson's challenges, including Matson's request that APL and Mr. Hermosa de-designate other challenged documents.

On March 1, 2024, Matson filed its motion for summary judgment and *Daubert* motion, as well as a motion to provisionally file under seal 373 of the 498 exhibits filed in support. *See* Dkts. 107, 107-1, 107-2, 108, 108-1, 115. The basis of Matson's motion for provisional sealing was that the exhibits either reference or constitute documents or deposition testimony designated as "Confidential" or "Highly Confidential – Attorneys' Eyes Only" pursuant to the Protective Order by a party other than Matson. *See* Dkt. 115. About 20 minutes after Matson completed its filing, APL served Matson with a letter de-designating 89 documents and the challenged portion of two deposition transcripts; it also downgraded 149 documents and parts of the challenged portions of twelve other deposition transcripts from "Highly Confidential – Attorneys' Eyes Only" to "Confidential."[1]

The Court granted Matson's motion and invited it to oppose any subsequent motion seeking to maintain the sealing of the materials. Dkt. 125. In response to the Court's order, six different parties or third parties filed motions to maintain the sealing of Exhibits to the Declaration of Rachel S. Brass—Home Depot (Dkt. 127), Toyota Motor Sales U.S.A., Inc. ("Toyota") (Dkt. 129), CMA CGM (America) LLC ("CCA") and Rodolphe Saadé (Dkt. 130), Charlie Hermosa (Dkt. 132), and

---

[1] APL's Motion to Maintain Sealed Materials (Dkt. 133) also identified, for the first time, additional documents that "APL has determined . . . need not remain sealed" and stated that APL would "inform Defendants" of the impacted materials in "subsequent correspondence." Dkt. 133 at 4 n.2 & Appendix A. Nearly two weeks later, and on the night prior to Matson's deadline to file this opposition, APL served Matson with a letter de-designating 28 documents and parts of the challenged portions of two deposition transcripts; it also downgraded five documents and parts of the challenged portions of two deposition transcripts from "Highly Confidential – Attorneys' Eyes Only" to "Confidential."

3

APL (Dkt. 133).[2,3]  Matson does not oppose the motions filed by Home Depot, Toyota, CCA, or Rodolphe Saadé.  *See* Dkts. 127, 129, 130.

## ARGUMENT

The Court should deny APL's and Mr. Hermosa's motions to maintain seal over the 273 summary judgment and *Daubert* exhibits at issue.  In determining whether documents are appropriately filed under seal, courts in this Circuit consider the following six "*Hubbard*" factors:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996); *see also Hubbard*, 650 F.2d at 317–22.  It is the burden of the party seeking to maintain documents under seal to

---

[2] Matson's March 1, 2024 filing also included Exhibits to the Declaration of Rachel S. Brass which reference or constitute documents or deposition testimony designated as "Confidential" or "Highly Confidential – Attorneys' Eyes Only," pursuant to the Protective Order by CEVA Freight LLC ("CEVA"), MidPacific Distributors, Inc. ("MidPac"), North West Company Inc. d/b/a Cost.U.Less ("Cost.U.Less"), and Pepsi-Cola Bottling Company of Guam ("Pepsi Guam"). Counsel for MidPac and Pepsi Guam agreed to de-designate the materials cited in Exhibits 428 and 432, and counsel for CEVA de-designated the portion of Exhibit 147 which Matson cited in its filing.  Counsel for Cost.U.Less informed Matson it would not move to maintain the sealing of Exhibits 70, 284, and 319.  Following Matson's March 1, 2024 filing, CCA, Rodolphe Saadé and Home Depot also de-designated materials previously designated pursuant to the Protective Order. These materials were filed in Exhibits 71, 73, 395, 420, and 436 to the Declaration of Rachel S. Brass.

[3] The following Exhibits to the Declaration of Rachel S. Brass were either de-designated under the Protective Order by the designating party following Matson's March 1, 2024 filing or were not subject to a motion to maintain sealed materials: Exhibits 2, 23, 43, 65, 68, 70, 72, 74, 76, 79, 81–82, 108–10, 112, 126, 128–30, 133, 139, 148, 150, 157, 173, 179, 185, 187, 189, 191, 196, 206, 215–17, 230, 232, 237, 247, 250, 259, 261, 263, 275–76, 284, 296, 299, 302–03, 307, 319–320, 323, 333, 338, 353, 358, 369, 371, 373, 375, 377, 379, 381, 383–86, 391–92, 395, 397, 399, 418–20, 422, 424, 428, 432–33, 436, 443–44, 465, 471–72, 474, 476–77, 480, and 482 and portions of Exhibits 15, 71, 73, 147, 343, 356, 394, 396, and 451.

overcome the strong presumption in favor of public access to judicial proceedings. *ISS Marine Servs., Inc.*, 905 F. Supp. 2d at 140–41 (holding that the party arguing against disclosure has the burden to "demonstrate the *absence* of a need for public access" (emphasis in original)); *see also In re McCormick & Co.*, 316 F. Supp. 3d at 465. Because the majority of the *Hubbard* factors weigh in favor of public access, APL and Mr. Hermosa have failed to carry their burden.

A.   **Mr. Hermosa has failed to carry his burden under *Hubbard*.**

Mr. Hermosa seeks to maintain under seal a single document, Exhibit 450. He argues only that it was properly designated under the Protective Order, and does not even attempt a *Hubbard* analysis. *See* Dkt. 132. Whether something is properly designated under a protective order does not govern whether it is properly maintained under seal when filed on the Court's docket. *See Aristotle Int'l, Inc. v. NGP Software, Inc.*, 714 F. Supp. 2d 1, 20 (D.D.C. 2010) ("the District Court cannot abdicate its responsibility to . . . determine whether filings should be made available to the public by allowing the parties to control public access pursuant to a protective order" (internal quotation omitted)); *Grynberg v. BP PLC*, 205 F. Supp. 3d 1, 3 (D.D.C. 2016) ("Although confidentiality agreements between private parties may weigh against disclosure, they do not dictate whether documents can be filed under seal."). Because Mr. Hermosa fails to argue that the exhibit is properly maintained under seal under *Hubbard* (it is not), he has failed to carry his burden under *Hubbard*. *In re McCormick & Co.*, 316 F. Supp. 3d at 465. Regardless, as discussed below, the *Hubbard* factors weigh against maintaining this exhibit under seal. *See id.* at 466 (unsealing documents "[g]iven the weight of the *Hubbard* factors and defendants' failure to identify any specific information in the pleadings that might cause them competitive harm").

**B.     The public has an established right to access documents that the Court will rely on in deciding summary judgment.**

APL's and Mr. Hermosa's motions stumble at the starting blocks because they cannot overcome the "strong presumption in favor of public access to judicial proceedings." *United States v. All Assets Held at Bank Julius Baer & Co.*, 520 F. Supp. 3d 71, 75, 78 (D.D.C. 2020); *Nat'l Children's Ctr., Inc.*, 98 F.3d at 1409 ("the starting point in considering a motion to seal court records is a strong presumption in favor of public access to judicial proceedings" (internal quotation omitted)).

That presumption is at its "apex" where, as here, "a matter has reached the adjudication stage." *Berliner Corcoran & Rowe LLP*, 662 F. Supp. 2d at 133.  Indeed, "[t]ransparency and access to [the summary judgment documents and evidence] is central to the integrity of the[ ] proceedings." *Herron v. Fannie Mae*, 2016 WL 10677615, at *4 (D.D.C. June 20, 2016).  After nearly two years of discovery, Matson has filed its motion for summary judgment on all of APL's claims, based in large part on materials that APL seeks to keep under seal.  In such circumstances, where a party has "indicated that he intended for the court to rely on these filings in adjudicating his dispute," the weight of authority in this Circuit counsels in favor of public disclosure.  *Zapp v. Zhenli Ye Gon*, 746 F. Supp. 2d 145, 151 (D.D.C. 2010); *see also All Assets Held at Bank Julius Baer & Co.*, 520 F. Supp. 3d at 85 ("Generally, there is a strong presumption of public access to documents that a litigant submits with the intention that the court will rely on them.").

APL's argument (Dkt. 133 at 5) that this dispute is not one of three unique proceedings in which courts have found an even *stronger* presumption of transparency is beside the point. *See Friedman v. Sebelius*, 672 F. Supp. 2d 54, 58 (D.D.C. 2009).  No heightened presumption is necessary here—Matson's motion is case-dispositive, and the exhibits it seeks to unseal are "intended to influence" the Court's summary judgment decision.  *Metlife, Inc. v. Fin. Stability*

6

*Oversight Council*, 865 F.3d 661, 668 (D.C. Cir. 2017). Accordingly, the first factor (need for public access) and sixth factor (purposes for which documents were introduced) weigh heavily in favor of public disclosure.

C. **Neither motion establishes litigation prejudice that would result from public disclosure or that APL's or Mr. Hermosa's property or privacy interests favor sealing.**

The fourth and fifth factors—the strength of any property and privacy interests asserted and the possibility of prejudice to those opposing disclosure—"are interrelated," *Am. Pro. Agency, Inc. v. NASW Assurance Servs., Inc.*, 121 F. Supp. 3d 21, 25 (D.D.C. 2013), and weigh in favor of unsealing. APL provides nothing more than a conclusory claim that it will endure prejudice if the exhibits at issue are filed publicly, citing a declaration filed by its general counsel. Dkt. 133 at 5. That declaration addresses only possible prejudice to APL's business. Dkt. 133-1 at ¶¶ 3, 5, 7, 9. But the prejudice factor is designed to prevent "***legal*** prejudice—i.e., harm in future litigation"— rather than general reputational harm or inconvenience. *Zapp*, 746 F. Supp. 2d at 150 (emphasis added); *see also Jackson v. Starbucks Corp.*, 2022 WL 888180, at *2 n.1 (D.D.C. Mar. 25, 2022) ("fifth factor inapplicable" where party seeking leave to file under seal "[did] not identify any harm to its interests in future litigation that would flow from release of" the information); *United States ex rel. Durham v. Prospect Waterproofing, Inc.*, 818 F. Supp. 2d 64, 68–69 (D.D.C. 2011) (fifth factor "resolve[d] . . . in favor of lifting the seal" where party "[did] not explain how unsealing would lead to prejudice in future litigation"). APL has not identified any such legal prejudice that public disclosure of the disputed exhibits would create.

Moreover, APL does not have a strong property or privacy interest in the information it seeks to maintain under seal because the information is now stale and therefore its disclosure would not impact APL's competitive standing. Most of the documents produced in this case were created two years ago or more. Of the documents at issue, 190 were created before 2020; and another fifty

were created between 2020 and when this lawsuit was filed on July 28, 2021 and are tied to accusations APL made publicly. Where the charge could be publicly filed, the truth cannot possibly implicate a strong property or privacy interest. *See, e.g.*, *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006) ("the private interests of the litigants are not the only weights on the scale" once discovery materials are filed with the court). APL has not explained how this information poses a competitive risk today, especially when things like pricing terms are regularly renegotiated, and the majority of prices are filed in a public tariff. *See, e.g.*, Dkt. 118-3 (Langer Rpt.) ¶ 45. Nor do APL's explanations for its interest in the confidentiality of these documents hold together. For example, APL claims that its "internal characterizations of customers" should be kept under seal, but its only rationale is that "APL's customers . . . provide information to APL based upon the predicate and understanding that this type of information about them not be made known to their competitors." Dkt. 133 at 9. Surely APL's competitors have no control over APL's internal characterizations. In any event, "there is no exception to the presumption of public access merely because evidence is sensitive, particularly where, as here, the exhibits sought to be sealed contain evidence that is highly probative to the case." *Craven v. Novelli*, 661 F. Supp. 3d 430, 457 (W.D.N.C. 2023). The fourth and fifth factors also weigh in favor of unsealing the exhibits.

**D.     The public has access to some of the information in the disputed exhibits.**

The second factor—the extent of previous public access—weighs in Matson's favor or is neutral.

APL's assertion that "the documents that [it] seeks to maintain the seal of are not disseminated to the public" (Dkt. 133 at 5) misses the point. The inquiry focuses not on whether the *documents* in question have been publicly disseminated, but on whether the information they *contain* is in the public domain. *All Assets Held at Bank Julius Baer & Co.*, 520 F. Supp. 3d at 83

(finding that, while "[t]he public ha[d] not previously had access to these specific deposition excerpts . . . a considerable amount of the information included in those excerpts [wa]s in the public domain"). APL has not demonstrated that the information contained in the materials it seeks to maintain under seal is not already in the public domain, as is its burden, and it could not. Rather, the disputed exhibits contain information about APL's Guam service that at most adds color to information APL has already placed in the public domain—including, among others, service and price information found in APL's first amended complaint, the parties' Rule 12 briefing, the Court's Rule 12 order, and the public tariff. *See, e.g.*, Dkt. 10 ¶ 51 n.6 (APL's slower "transit time from the U.S. West Coast to Guam" limited its ability to "contest or compete with Matson on all the various lines of container cargo in the U.S./Guam trade"); Dkt. 15-1 at 1 (APL's "on-time arrival" rate (measured as within 24 hours of the scheduled arrival date and time) was at best 10% as of September 2021); Dkt. 112-46 (webpage for APL's "Rates & Tariffs"). And although "[p]revious access is a factor which may weigh in favor of subsequent access, the second *Hubbard* factor is 'neutral' where there has been no previous access." *Am. Pro. Agency, Inc.*, 121 F. Supp. 3d at 24 (citation omitted). Accordingly, the second factor either counsels in favor of unsealing or is neutral.

E. **APL's and Hermosa's desire to keep the exhibits under seal should not be given much weight.**

Finally, the third factor—APL's objection to disclosure, and the strength of its property and privacy interests asserted—provides little help to APL. This factor virtually always weighs in favor of the party seeking to maintain materials under seal like APL. *Friedman*, 672 F. Supp. 2d at 59 ("The plaintiffs wish to keep the record sealed, and the fact that a party objects to unsealing the record weighs in that party's favor in the *Hubbard* analysis." (citation omitted)). It is not sufficient to overcome the presumption of access to court filings in this Circuit.

## CONCLUSION

The majority of the *Hubbard* factors weigh decisively in favor of unsealing. The only factor that weighs in APL's favor does so for *every* party that objects to unsealing. The Court should deny APL's and Mr. Hermosa's motions. To the extent the Court is not inclined to unseal the exhibits or portions of the exhibits that Matson has challenged, Matson respectfully requests that the Court order APL to undertake the exercise APL proposes in footnote 1 of its motion and "offer redactions to the protected material." Dkt. 133 at 2 n.1.

In addition, the Court should order that Matson publicly re-file all Exhibits or portions of Exhibits to the Declaration of Rachel S. Brass that have been de-designated under the Protective Order since Matson's March 1, 2024 filing, or that were not otherwise subject to a motion to maintain sealed materials; any materials the Court finds do not merit sealing; and Matson's March 1, 2024 filing with modified redactions to reflect the unsealed Exhibits to the Declaration of Rachel S. Brass within 14 days of the Court's final order concerning the motions to seal (Dkts. 115 & 126–133), and that all future filings in this case conform with the sealing guidance that Order contains.

Dated:   April 2, 2024                                Respectfully submitted,

*/s/ Rachel S. Brass*

Rachel S. Brass, *pro hac vice*
RBrass@gibsondunn.com
Caeli A. Higney, *pro hac vice*
CHigney@gibsondunn.com
Julian W. Kleinbrodt, *pro hac vice*
JKleinbrodt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
(415) 393-8200

Matthew S. Rozen, DC Bar No. 1023209
MRozen@gibsondunn.com
Amalia Reiss, DC Bar No. 241775
AReiss@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500

David Salant, *pro hac vice*
DSalant@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000

*Counsel for Defendants Matson Navigation Company, Inc. and Matson Logistics, Inc.*

## **CERTIFICATE OF SERVICE**

Pursuant to Local Civil Rule 5.3, I hereby certify that, on April 2, 2024, I caused to be served on Plaintiffs the foregoing Opposition to APL's and Charlie Hermosa's Motions to Maintain Sealed Materials via CM/ECF.

| | |
|---|---|
| Dated:   April 2, 2024 | */s/ Rachel S. Brass* |
| | Rachel S. Brass, *pro hac vice* |