## REDACTED PUBLIC VERSION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN PRESIDENT LINES, LLC, APL MARITIME, LTD., APL MARINE SERVICES, LTD., <br><br>         Plaintiffs, <br><br>    v. <br><br> MATSON NAVIGATION COMPANY, INC., MATSON LOGISTICS, INC., <br><br>         Defendants. | No. 1:21-cv 2040-CRC <br><br> **ORAL ARGUMENT REQUESTED** |

**MATSON'S MEMORANDUM OF LAW IN OPPOSITION TO
APL'S OBJECTION PURSUANT TO RULE 56(C)(2) AND MOTION TO STRIKE**

<u>**REDACTED PUBLIC VERSION**</u>

**TABLE OF CONTENTS**

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................... 2

    I.      The "Meat and Potatoes" of APL's Case:  Alleged "Threatening Conduct" ........ 3

          A.     APL Identifies 14 Allegedly Threatened Third Parties by Entity Name in Its Initial Disclosures and Interrogatory Responses ................... 3

          B.     Matson Successfully Moves to Compel APL to Provide the Names and Contact Information for Witnesses to Matson's Alleged Threats ............................................................................................................... 6

          C.     APL Refuses to Provide the Names and Contact Information, So Matson Successfully Moves to Compel Again ........................................... 6

          D.     APL Witnesses Identify Three More Allegedly Threatened Entities ........ 8

    II.     Matson Complies with Its Discovery and Other Obligations Regarding Declarations ................................................................................................................ 10

          A.     Matson Supplemented Its Initial Disclosures Nine Times to Include Declarants and Timely Produced Executed Declarations ........................ 10

          B.     Each Challenged Declaration Complies with 28 U.S.C. § 1746 ............. 11

          C.     The Declarations Deny APL's Claims of "Threatening Conduct" .......... 12

    III.    APL's Claimed Conflicting Evidence ................................................................. 14

LEGAL STANDARD ............................................................................................................. 15

ARGUMENT ........................................................................................................................... 16

    I.      Matson Fully Complied with Rule 26 ................................................................. 17

    II.     Matson Did Not Fail to Timely Produce Any Declarations ................................. 21

    III.    The Declarations Comply with Rule 56 and All Applicable Evidentiary Rules ..................................................................................................................... 21

          A.     The Declarations Are Based on Personal Knowledge ............................. 21

          B.     The Declarations Are Not Hearsay ........................................................... 23

          C.     The Declarations Are Otherwise Admissible Evidence ........................... 24

    IV.    APL's Claims of "Contradicting Evidence" Are Baseless ................................. 26

CONCLUSION ........................................................................................................................ 26

**REDACTED PUBLIC VERSION**

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Aenergy, S.A. v. Republic of Angola*,
    678 F. Supp. 3d 147 (D.D.C. 2023) ....................................................................24

*\*Akers v. Beal Bank*,
    845 F. Supp. 2d 238 (D.D.C. 2012), *aff'd*, 2012 WL 4774676
    (D.C. Cir. Oct. 2, 2012) .................................................................21, 22, 23

*Ascom Hasler Mailing Sys., Inc. v. U.S. Postal Serv.*,
    815 F. Supp. 2d 148 (D.D.C. 2011) ...................................................................16

*In re Asemani*,
    455 F.3d 296 (D.C. Cir. 2006) ..........................................................................24

*\*Barnes v. D.C.*,
    289 F.R.D. 1 (D.D.C. 2012) ........................................................................15, 16

*Brody v. U. S. Dep't of Just.*,
    2023 WL 1511679 (D.C. Cir. Feb. 3, 2023) ...............................................16, 21

*Canady v. Erbe Elektromedizin GmbH*,
    384 F. Supp. 2d 176 (D.D.C. 2005), *aff'd*, 182 F. App'x 988 (Fed. Cir. 2006) ...............15, 20

*Catrett v. Johns–Manville Sales Corp.*,
    826 F.2d 33 (D.C. Cir. 1987) ............................................................................23

*Ecological Rts. Found. v. U.S. Env't Prot. Agency*,
    541 F. Supp. 3d 34 (D.D.C. 2021) ....................................................................22

*EEOC v. Austal USA, LLC*,
    447 F. Supp. 3d 1252 (S.D. Ala. 2020) .............................................................25

*Elion v. Jackson*,
    544 F. Supp. 2d 1 (D.D.C. 2008) ......................................................................18

*Elliot v. Fed. Bureau of Prisons*,
    2006 WL 5217760 (D.D.C. Oct. 17, 2006) .......................................................22

*Esquibel v. Peters*,
    2008 WL 11390842 (D.D.C. Nov. 17, 2008) ....................................................19

*Fraternal Ord. of Police, Lodge 1 v. City of Camden*,
    842 F.3d 231 (3d Cir. 2016)..............................................................................24

*\*G&E Real Est., Inc. v. Avison Young-Washington, D.C., LLC*,
    323 F.R.D. 67 (D.D.C. 2017)......................................................................16, 18

*Gleklen v. Democratic Cong. Campaign Comm., Inc.*,
    199 F.3d 1365 (D.C. Cir. 2000) ........................................................................23

**REDACTED PUBLIC VERSION**

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Johnson v. Shinseki,*
    811 F. Supp. 2d 336 (D.D.C. 2011) ............................................................21

*Leupold & Stevens, Inc. v. Lightforce USA, Inc.,*
    501 F. Supp. 3d 987 (D. Or. 2020) ............................................................24

*Lockey v. Fudge,*
    2022 WL 4285622 (D.C. Cir. June 1, 2022) ..............................................16

*Luxottica Grp. S.p.A. v. Light in the Box Ltd.,*
    2016 WL 6092636 (N.D. Ill. Oct. 19, 2016) ..............................................25

*Millennium TGA, Inc. v. Comcast Cable Commc'ns LLC,*
    286 F.R.D. 8 (D.D.C. 2012) ......................................................................25

*\*Ng v. Lahood,*
    952 F. Supp. 2d 85 (D.D.C. 2013) .......................................................17, 21

*Richards v. Option One Mortg. Corp.,*
    2009 WL 2751831 (D.D.C. Aug. 28, 2009) ..............................................23

*Standley v. Edmonds-Leach,*
    783 F.3d 1276 (D.C. Cir. 2015) ..........................................................16, 20

*Sterling Nat'l Bank v. Block,*
    2018 WL 11200447 (N.D. Ill. Apr. 18, 2018) ..........................................18

*In re Subpoena to Dependable Hawaiian Express, Inc.,*
    No. 2:23-mc-00141-JLS-PD (C.D. Cal.) ..................................................19

*Vermeer v. Univ. of Del.,*
    2024 WL 81291 (D. Del. Jan. 8, 2024) ....................................................24

*White Coat Waste Project v. U.S. Dep't of Veterans Affairs,*
    404 F. Supp. 3d 87 (D.D.C. 2019) ............................................................23

**Statutes**

28 U.S.C. § 1746 ...............................................................................................12, 24

**Rules**

Fed. R. Civ. P. 26(a) ............................................................................................4, 16

Fed. R. Civ. P. 37(a)(1) ..........................................................................................19

Fed. R. Civ. P. 37(c)(1) ...........................................................................................15

Fed. R. Civ. P. 56(c)(2) ...........................................................................................16

**REDACTED PUBLIC VERSION**

## TABLE OF AUTHORITIES
(continued)

Page(s)

Fed. R. Civ. P. 56(c)(4)...........................................................................................................16, 21

**REDACTED PUBLIC VERSION**

**PRELIMINARY STATEMENT**

From the day this case was filed, APL alleged that Matson threatened, pressured or harassed customers to keep them from doing business with APL.  This was the "meat and potatoes" of APL's complaint.  Hr'g Tr. 51:3 (July 10, 2023).  Two motions to compel, each successful, were required before APL would identify the supposed targets of that alleged anticompetitive conduct.  *See* Feb. 6, 2023 Minute Order; Aug. 11, 2023 Minute Order.  Senior-level witnesses with personal knowledge of shipping to Guam from 17 of those supposed targets submitted 18 declarations disavowing APL's allegations under penalty of perjury, each one flatly denying that Matson ever "threatened" or "punished" them in any way.[1]

APL's motion to strike these declarations (Dkt. 153) is a transparent attempt to suppress the most objective, decisive, and damning evidence in this case.  The declarations come from the very APL customers that APL identified as the targets of Matson's alleged wrongdoing.  APL's anonymized "allegations of threatening conduct" were the backbone of its First Amended Complaint ("FAC") and the reason its FAC survived a motion to dismiss.  Dkt. 33 at 20–21 & n.7 ("MTD Order").  But the Court warned APL it would be expected to "provide more details . . . during discovery" of the alleged threatening conduct.  *Id.* at 20 n.7.  APL failed to do so, choosing not to depose these third parties and leaving it to Matson to seek out their side of the story.

Their testimony jumps off the page.  The General Manager of Saipan Shipping said, "APL's allegations concerning Saipan Shipping are absolutely false."  Dkt. 113-40 (DX-441) ¶ 11.  The

---

[1]  The 18 declarations APL moves to strike were filed with Matson's March 1, 2024 summary judgment papers at docket entries 109-25 (DX-25) (CFR Rinkens), 109-55 (DX-55) (Aduana), 111-32 (DX-233) (DHX), 112-40 (DX-341) (Cost.U.Less), 112-41 (DX-342) (Ross Stores), 112-86 (DX-387) (Macy's), 112-97 (DX-398) (DeWitt), 113-24 (DX-425) (Luen Fung), 113-25 (DX-426) (Luen Fung), 113-26 (DX-427) (MidPac), 113-28 (DX-429) (BMI Automotive), 113-30 (DX-431) (Pepsi Guam), 113-34 (DX-435) (Fastenal), 113-40 (DX-441) (Saipan Shipping), 114-1 (Pasha), 114-2 (McDonald's of Guam and Saipan), 114-3 (Ambros), and 121-39 (DX-343) (Toyota North America).

General Manager of Fastenal said, "I have no knowledge or recollection of APL's allegations involving Fastenal, and am confident they did not in fact take place." Dkt. 113-34 (DX-435) ¶ 7. The General Manager of Pepsi Guam said, "Pepsi Guam has no knowledge of the factual basis of the allegations in APL's FAC. . . .  To be clear, I have not experienced any of the conduct which APL has accused Matson of doing." Dkt. 113-30 (DX-431) ¶ 7.  The then-Director of Logistics at Macy's said, "I . . . have no recollection of APL ever making such an offer [which APL alleged Matson scuttled with threats], or any of my current or former colleagues . . . mentioning any such offer." Dkt. 112-86 (DX-387) ¶ 7.  The Administration Manager of Luen Fung Enterprises said, "I cannot understand why APL [ ] identified me as a person who has knowledge regarding its claims, as I have no knowledge of any of the allegations in APL's FAC or the discovery response in which I was identified." Dkt. 113-24 (DX-425) ¶ 6.  And George Pasha IV, President and CEO of The Pasha Group, said, "My decisions had nothing to do with Matson.  I did not have any concerns that Matson would react adversely to a partnership between or joint sales activity by APL and The Pasha Group." Dkt. 114-1 ¶¶ 4–5.

The declarations show APL's lawsuit is and always has been without any basis in evidence. APL should and would have known this had it conducted its pre-suit investigation or fact discovery with any modicum of diligence.  Its failure to do so caused the parties and this Court to waste enormous resources on two years of sprawling antitrust discovery.  To protract its false claims, APL now moves to strike the words of the very customers *it identified* as the alleged subjects of Matson's purported misconduct in its verified interrogatory responses or in deposition testimony. APL's motion ignores basic facts and controlling law and should be denied.

## FACTUAL BACKGROUND

APL charged Matson with serious conduct:  threatening, pressuring, or harassing customers to prevent fair competition.  APL then thwarted attempts to discover the identity of those customers

REDACTED PUBLIC VERSION

for months, ultimately requiring two separate court orders before naming them.  The reason was clear—none of the "victims" APL identified shared its view of events.

## I.  The "Meat and Potatoes" of APL's Case:  Alleged "Threatening Conduct"

In its FAC, APL accused Matson of threatening customers with higher rates in both Guam and Hawaii if they shipped with APL, of threatening freight forwarders and trucking companies with negative repercussions if they did business with APL, and of conditioning discounts on shippers discontinuing their business with APL.  *See* FAC ¶¶ 44–46, 48–49, 55–56.  APL named no specific shippers, freight forwarders, or trucking companies or carriers in its allegations.  *Id.* Still, APL represented at the motion to dismiss hearing that customers had contacted it saying they could not ship with APL for fear of higher prices from Matson.  Hr'g Tr. 35:14–19 (June 21, 2022).

Crediting these allegations, the Court found "APL plausibly allege[d] exclusionary conduct that would give rise to a section 2 violation."  MTD Order 20–21.  In so doing, "[t]he Court assume[d] that APL will be able to provide more details supporting its allegations of threatening conduct during discovery."  *Id.* at 20 n.7.

### A.  APL Identifies 14 Allegedly Threatened Third Parties by Entity Name in Its Initial Disclosures and Interrogatory Responses

On October 19, 2022, Matson served interrogatories asking APL to identify all third parties it claimed were "threatened," including the "identity of the Person(s) allegedly threatened" and "the substance of the alleged threat."  Ex. 2 at Inter. No. 2.[2]  In unverified November 18, 2022 responses, APL levied a host of objections, identified one customer entity, and stated that the third parties were "identified in APL's Initial Disclosures."  Ex. 3 at 5, 6, 7, 11–12, 13.

APL's initial disclosures—served the same day as its interrogatory responses—included a

---

[2]  Citations to "Ex. __" refer to exhibits to the accompanying Declaration of Thomas Tyson in Opposition to APL's Motion to Strike, dated June 14, 2024 ("Tyson Decl.").

list of "[t]hird-party entities referenced in Amended Complaint or otherwise likely to have discoverable information." Ex. 4 at 3–4.  The "[t]hird-party entities" APL disclosed included 13 out of the 17 who would submit declarations APL now moves to strike, namely:  (1) "CFR Rinken" [sic], (2) "Cost U Less" [sic], (3) "The DeWitt Companies," (4) "DHX," (5) "Luen Fung Enterprises," (6) "Macy's," (7) "IBD," (8) "The National Automotive Parts Association (NAPA Auto Parts)," (9) "The Pasha Group," (10) "Pepsi Guam," (11) "Ross Stores," (12) "Saipan Shipping Company," and (13) "Toyota Motor Corporation."  *Id*.  APL's initial disclosures listed these third-party company names but did not identify any specific person or witness at any company.  They did not include contact information.  *Id*.; *cf*. Fed. R. Civ. P. 26(a)(1)(A)(i) (requiring disclosure of "the *name* and, if known, *the address and telephone number* of each *individual* likely to have discoverable information" (emphases added)).  And they did not explain what discoverable information any of those entities was likely to have, including which were sources of the alleged complaints made to APL regarding Matson's conduct. Ex. 4 at 3–4; *cf*. Fed. R. Civ. P. 26(a)(1)(A)(i) (requiring disclosure of "the subjects of" discoverable information each disclosed individual is "likely to have").

On November 27, 2022, Matson requested that APL amend its disclosures to provide more information, but APL refused, based on its view that the parties had "agree[d] to limit Disclosures to third-party *entities*" and therefore need not identify individuals at those entities nor comply with the balance of Rule 26(a). Dkt. 48 at 4 n.2 (emphasis in original).  APL twice amended its initial disclosures, but never provided further information about any of these third-party entities. Ex. 5 (APL's amended initial disclosures); Dkt. 113-29 (DX-430) (APL's second amended initial disclosures).  Its only change was to revise "IBD" to "Island Beverage Distributors, also known as Mid Pacific Distributors or MidPac." Ex. 5 at 3.

**REDACTED PUBLIC VERSION**

On November 29, 2022, Matson requested that APL provide complete, verified responses to its interrogatories regarding third-party customers, noting that APL's November 18 interrogatory responses had pointed to information within APL's initial disclosures, but APL's initial disclosures did not contain the needed information to assess APL's allegations of "threats" to third parties. Ex. 6 at 3–4. On November 30, 2022 Matson served another interrogatory requesting disclosure of the individual witnesses at each of the third-party entities identified in APL's initial disclosures. Ex. 7 at Inter. No. 20. On December 30, APL responded with objections and the response that it would produce "information regarding third parties located through a reasonable search," and referred Matson to its "forthcoming First Supplemented Plaintiffs' Objections and Responses to Defendants['] First Set of Interrogatories." Ex. 8 at 4.

By January 2, 2023, APL still had not served supplemental interrogatory responses. Noting that "it should go without saying that one cannot refuse to answer an interrogatory in a timely manner by incorporating a supposed forthcoming supplementation that it has not yet served, particularly when Matson was forced to serve this interrogatory precisely because APL has refused to provide this information in response to past discovery responses," Matson asked APL to give a substantive response to its November 30 Interrogatory Number 20 by January 3, or else it would bring a motion to compel to the Court. Ex. 9.

On January 4, 2023, the parties raised this dispute to the Court and were directed to submit a joint written submission by January 6. *See* Dkt. 48. On the evening of January 6, approximately 30 minutes before the parties were to exchange their drafts to be combined and immediately submitted to the Court, APL served its First Supplemental Plaintiffs' Objections and Responses to Defendants['] Interrogatories, in which it identified, for the first time, third-party entities and individuals it said made the complaints to APL alleged in the FAC. *See* Ex. 10.

**REDACTED PUBLIC VERSION**

APL's January 6, 2023 responses named 10 of the 13 at-issue entities disclosed in its initial disclosures, and six individuals at those entities, whom APL said made the complaints alleged in the FAC.  They also identified for the first time a fourteenth third-party allegedly subject to Matson's threats or related conduct—Fastenal Co.—but named no Fastenal employees.  *See* Ex. 10 at 8 (first identifying "Matson's punishment of Fastenal in Guam" as "an example referenced in the Amended Complaint").  No contact information was provided for any witness or entity.

**B.      Matson Successfully Moves to Compel APL to Provide the Names and Contact Information for Witnesses to Matson's Alleged Threats**

The parties continued to dispute the sufficiency of APL's January 6 supplemental interrogatory responses.  Matson therefore moved forward with its previously noticed motion to compel.  On February 2, 2023, the Court held a conference and, having heard from counsel, said to APL:  "to the extent you know individuals who . . . conveyed to you that Matson made threats identified in your complaint or that you otherwise are going to rely on at trial to shore up those allegations, I think Matson is entitled to know their names and not just their organization affiliations.  All right?  So give them that information."  Hr'g Tr. 6:9–16 (Feb. 2, 2023).  On February 6, the Court issued an order that, "Plaintiffs shall supplement their response to Defendants' Interrogatories with the identity and contact information of individuals and entities that possess information concerning alleged threats and exclusionary conduct on the part of Defendants . . . .  The parties shall also generally supplement their responses as necessary as discovery proceeds."  Feb. 6, 2023 Minute Order.

**C.      APL Refuses to Provide the Names and Contact Information, So Matson Successfully Moves to Compel Again**

For months thereafter, and despite repeated requests from Matson, APL did not disclose "the identity and contact information of individuals and entities that possess information concerning alleged threats," as the Court had plainly ordered on February 6.  On February 14,

<u>**REDACTED PUBLIC VERSION**</u>

2023, APL served its Second Supplemented Plaintiffs' Objections and Responses to Defendants' First Set of Interrogatories, ████████████████████████████████████████████ ████████████████████████████████. Ex. 11 at 21–22.  Through February, March, April, and May 2023, the parties continued to dispute whether APL's interrogatory responses had complied with the Court's February 6 order.  The parties even exchanged annotated interrogatory responses flagging exactly what information they thought was missing from each other's interrogatory responses.  While Matson provided supplemental interrogatory responses in March and April 2023 based upon APL's annotations, APL continued to stonewall.

On June 19, 2023, APL served its Third Supplemented Plaintiffs Objections and Responses to Defendants' First Set of Interrogatories.  Ex. 12.  APL added ███████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ██████████  *Id.* at 24.  ██████████████████████████████, such that it was impossible to discern who at APL communicated with any given third party, much less the source or basis of APL's knowledge about Matson's supposed threats.  So Matson again brought the issue to the Court.

On July 10, 2023, the Court held a discovery conference.  On the subject of APL's interrogatory responses disclosing its allegations of Matson's threatening conduct, the Court said: "As I think we tried to convey in the order on the motion to dismiss, you know, that is central to this case.  Matson is entitled to know, I believe, who was involved in each of those alleged threats so that they can depose them and ask them questions about it. . . . [T]hey need to know who was there and what the nature of the threats were."  Hr'g Tr. 51:5–13.  Referencing its prior February 6 order compelling APL's supplemental interrogatory responses, the Court said, "we will try to craft another minute order or another order, but there's the letter and the spirit.  And the spirit is to give

them the information that they need to identify folks to depose so that they can ask about the who, what, when, where's of those alleged incidents." *Id.* at 51:19–23.

In the weeks after the July 10 conference, APL continued to refuse to further supplement its interrogatory responses. In an August 3, 2023 joint submission and during an August 9, 2023 discovery conference, Matson once again raised that APL had not complied with the Court's February 6 order and clear July 10 instruction. *See* Dkt. 75 at 11; Hr'g Tr. 62:14 –67:9. The Court solicited the parties' written positions on August 10. *See* Dkt. 78, 79-2. On August 11, the Court again ordered Matson's requested relief: "the Court hereby orders APL, by August 16, 2023, to identify for Matson, in response to Interrogatory No. 2 of Matson's October 19, 2022 Interrogatories the following: (1) each APL employee listed in its Third Supplemental Response who had communications with relevant third-parties about the 'threats' alleged in APL's complaint and, for each employee, which third-party he or she communicated with; and (2) each employee who otherwise has relevant knowledge about such communications or threats, listed by third-party." Aug. 11, 2023 Minute Order.

On August 16, 2023, APL served its Fourth Supplemented Plaintiffs' Objections and Responses to Defendants' First Set of Interrogatories. Dkt. 121-71 (DX-392). These supplemental responses, at last, paired particular APL employees with particular third-parties allegedly victim to threatening conduct by Matson. *Id.* at 25. But APL's responses *still* did not identify *a person* at the third-party entity each person at APL spoke with, nor any particular dates or subjects of conversations. They also did not add any new entities allegedly subject to Matson's conduct. *See* **App'x A** (dates APL first disclosed each allegedly threatened third-party).

### D.    APL Witnesses Identify Three More Allegedly Threatened Entities

Deposition discovery started on August 17, 2023, the day before APL served its fourth and final supplemental interrogatory responses. The parties selected their deponents in light of the

**REDACTED PUBLIC VERSION**

Court-ordered limitation of 20 total fact depositions per side.  Dkt. 37 ¶ 4.  APL took 18 total depositions, including six third-party witnesses: John Burrows (DeWitt), Cori Berking (DeWitt), Van Shelly (Nissan Motor Corp. Guam), George Baggen (Samson Tug & Barge), James Honda (GTW), and Gina Angoco (V. Angoco Trucking).  From September 18–29, 2023, counsel for both parties traveled to Guam to conduct fact witness depositions there.

During depositions on Guam and afterward, APL witnesses testified that Matson allegedly "threatened" or "punished" three additional third-party entities not among the 14 APL had previously disclosed.  *First*, on September 6, 2023, Matson deposed Kevin Theberge, the APL employee who testified that he verified each and every one of APL's interrogatory responses.  Dkt. 118-24 (DX-45) (Theberge Dep. Tr.) 33:12–163:4.  On examination by APL's counsel, he offered hearsay testimony that the President of a shipper named Aduana told him that "if she has cargo with APL from California, Matson's threatened to pull their low rate and increase the rates on them."  *Id.* at 345:13–16.  *Second*, on September 27, 2023, APL's Rule 30(b)(6) designee and former General Manager in Guam, Charlie Hermosa, first identified "McDonald's" as a third party who allegedly "did no business with APL because of . . . alleged disparagement" and "mistreatment" by Matson, and that "[t]he owner, Joe," would corroborate the same.  Dkt. 118-10 (DX-15) (APL 30(b)(6) Dep. Tr.) 275:16–18, 276:12, 283:19.  *Third* on October 11, 2023, the day discovery closed, APL's former President Edward Aldridge testified that the beverage distributor "███████████████████████████" by Matson's conduct in Guam.  Dkt. 118-58 (DX-86) (Aldridge Dep. Tr.) 96:15.

APL never amended its initial disclosures or interrogatory responses to include Aduana, McDonald's, or Ambros.  And despite receiving executed declarations beginning on April 3, 2023, APL did not depose any of the declarants regarding their declarations.

**II.      Matson Complies with Its Discovery and Other Obligations Regarding Declarations**

While APL was resisting discovery of the identity of the actual witnesses to the alleged

Matson conduct about which it sued, Matson diligently sought out the testimony of the third-party

entities APL *had* identified, and it timely produced declarations to APL.

**A.      Matson Supplemented Its Initial Disclosures Nine Times to Include Declarants and Timely Produced Executed Declarations**

In early 2023, Matson embarked on an extensive third-party discovery program, targeting

the third parties APL identified as subject to Matson's alleged threats and punishment.  Between

January 29 and June 14, 2023, Matson subpoenaed 12 of the 17 third parties whose declarations

APL now moves to strike.  Tyson Decl. ¶ 4.  Matson met and conferred with counsel for the

subpoenaed third parties to discuss the scope of a search for responsive documents, the production

of responsive documents, and the preparation of a declaration.  Tyson Decl. ¶ 5.  Incorporating

information learned in the meet-and-confer process, including during Zoom and telephone calls

with the declarants and their counsel, Matson prepared draft declarations for certain of the third

parties' review, comment, and execution.  Tyson Decl. ¶ 6.

Matson produced subpoena returns to APL in compliance with the parties' February 28,

2023 agreement to reproduce written subpoena responses and documents received in response to

subpoenas within five business days.  *See* Ex. 1.  Matson also timely supplemented its initial

disclosures nine times to incorporate the names, addresses, phone numbers, and email addresses

of declarants.  Matson did not subpoena the remaining five third-party entities because each

produced information voluntarily.  *See* **App'x B** (dates Matson disclosed third-party entities and

declarants).

**B.      Each Challenged Declaration Complies with 28 U.S.C. § 1746**

Each of the challenged declarations was made by an individual with personal knowledge and direct responsibility for his or her company's involvement with ocean carriage services to Guam or Hawaii.  In most cases, the declarant personally dealt with Matson and APL.  *See, e.g.*, Dkt. 112-86 (DX-387) ¶ 3 ("In my role at Macy's, I have over 10 years of experience with Macy's logistical operations and policies, including Macy's methods of conducting its business and interacting with . . . cargo shipping service providers.  This includes both Matson and American President Lines[.]"); Dkt. 113-30 (DX-431) ¶ 1 ("I have managed Pepsi Guam's shipping relationships with both Matson and American President Lines ('APL'), and have both interacted with, and overseen my employees who frequently interact with, representatives from both companies.").

The declarants are senior executives and employees of their respective companies.  Five are the owner, President, or CEO of the company or its relevant business unit.  *See* Dkt. 109-55 (DX-55) (Aduana), Dkt. 114-2 (McDonald's of Guam and Saipan), Dkt. 113-26 (DX-427) (MidPac), Dkt. 112-97 (DX-398) (DeWitt), Dkt. 114-1 (Pasha).  Two were made by CFOs, *see* Dkt. 113-28 (DX-429) (BMI Automotive), Dkt. 113-25 (DX-426) (Luen Fung), and five more were made by the General Manager of the Guam business, *see* Dkt. 114-3 (Ambros), Dkt. 111-32 (DX-233) (DHX), Dkt. 113-34 (DX-435) (Fastenal), Dkt. 113-30 (DX-431) (Pepsi Guam), Dkt. 113-40 (DX-441) (Saipan Shipping).  Most of these individuals have one, two, or more decades of experience at their respective companies.  *See* **App'x C** (declarants' titles and experience).

Each declarant stated that "I have personal knowledge of the facts set forth" in his or her declaration, and all but one stated that "if called as a witness could and would testify competently thereto."  *See, e.g.*, Dkt. 109-55 (DX-55) ¶ 1; *but see* Dkt. 121-39 (DX-343) ¶ 5 (using alternative formulation, "███████████████████████████████████████████████

**REDACTED PUBLIC VERSION**

███████████████████████████████████████████████████████

████████████████ ”).  Each declaration is signed "under penalty of perjury," and is otherwise

consistent with 28 U.S.C. § 1746.  *See, e.g.*, Dkt. 109-55 (DX-55) at 3.

### C.   The Declarations Deny APL's Claims of "Threatening Conduct"

Across the 18 declarations, every witness denies being threatened by Matson and denies

any retaliatory conduct by Matson in any way.  *See, e.g.*, Dkt. 113-26 (DX-427) ¶ 4 ("Matson has

never retaliated, or threatened retaliation, against MidPac as a result of MidPac conducting

business with APL.").  Each also denied disparagement by Matson against APL and confirmed all

shipping decisions were their own.  *See, e.g.*, Dkt. 112-40 (DX-341) ¶ 13 (Cost.U.Less: "Matson

has also never disparaged APL in any way.  Any reference to APL by Matson has always remained

professional and factual.").

Individual declarants went further, rejecting particular episodes APL alleged.  For example,

APL asserted that Matson "punish[ed]" Fastenal by "t[elling] Fastenal to stop providing parts to

GTW because they were used for APL's container chassis."  Ex. 10 at 8.  But Dustin Reiman,

General Manager of Fastenal, testified that "I have no knowledge or recollection of APL's

allegations involving Fastenal, and am confident they did not in fact take place.  In my experience,

Matson has always operated with professionalism and I have never heard of anyone at Matson

acting in the manner suggested above."  Dkt. 113-34 (DX-435) ¶ 7.   Similarly, customers'

presidents, principals, and managers responsible for shipping decisions denied the alleged threats

and disparagement time and again.  *See* Dkt. 113-25 (DX-426) ¶¶ 6–7 (Luen Fung); Dkt. 112-86

(DX-387) ¶¶ 10–16 (Macy's); Dkt. 112-41 (DX-342) ¶¶ 5–6 (Ross Stores); Dkt. 113-40 (DX-441)

¶¶ 1, 11 (Saipan Shipping).  And George Pasha IV, the President and CEO of The Pasha Group

categorically denied APL's allegation that Pasha declined to take part in a "joint operation

agreement" with APL "due to concern of adverse reaction by Matson." FAC ¶ 53; *see* Dkt. 114-1 ¶¶ 4–5 (Pasha). As a result, APL has now dropped any claim concerning Pasha.

Moreover, the declarants explain why APL's telling of threats, disparagement, and retaliation do not make sense. For example:

- Maria Lourdes Austria of **Aduana** explained: "I understand APL's service reliability issues and longer transit time independent of anything anyone from Matson has ever told me, and I do not recall Matson ever engaging in negative selling against APL." Dkt. 109-55 (DX-55) ¶ 9.

- Paje Butler of **DHX** explained: "Matson . . . has never threatened me, or anyone else at DHX to the best of my knowledge, with negative consequences (like worse rates, less reliable shipping, poorer service, or something similar) if DHX also did business with APL or moved more of its business to APL. DHX does some business with APL in Guam and has experienced no retaliation. Threats such as this do not make sense in a small and close-knit market like Guam. Relationships are key." Dkt. 111-32 (DX-233) ¶¶ 14–15.

- Dustin Reiman of **Fastenal** explained: "Fastenal ships considerable volume throughout the world, and its shipments to Guam represent a small fraction of both Fastenal's overall shipping business and its business with Matson. If Matson were to attempt to strong arm Fastenal in the way APL alleges, Fastenal would simply take its business elsewhere." Dkt. 113-34 (DX-435) ¶ 8.

- Mark Negri of **Macy's** explained: "In the shipping context, Macy's does not and would not lock itself into a long-term exclusive agreement that forecloses alternative options, especially those at 'substantially lower rates.' If a cargo shipping service provider,

including APL, was offering Macy's better value than its current provider as part of a bid process or RFP, Macy's would select the provider offering the best value and would switch providers." Dkt. 112-86 (DX-387) ¶ 8.

➤ Craig Wade of **BMI Automotive** (NAPA Auto Parts) explained: "While I am familiar with the name 'Phil Santos'"—the Matson salesperson whom APL claims disparaged APL to BMI Automotive and implicitly threatened future consequences if it did business with APL—"he is not my contact at Matson. I work with Camilo Lorenzo at Matson, and he has never made any of these kinds of statements to me." Dkt. 113-28 (DX-429) ¶ 6.

Finally, contrary to APL's assertion that Matson accepted "declarations from the third parties in lieu of compliance with the subpoena," Mot. 4, the declarants describe reasonable searches undertaken to find materials responsive to Matson's subpoenas—which sought any and all documents and communications supporting APL's claims of threatening conduct by Matson— and their findings that no such documents exist. *See, e.g.*, Dkt. 113-40 (DX-441) ¶ 9 (Saipan Shipping), Dkt. 113-34 (DX-435) ¶ 5 (Fastenal), Dkt. 113-25 (DX-426) ¶ 6 (Luen Fung), Dkt. 112-86 (DX-387) ¶ 5 (Macy's), Dkt. 113-26 (DX-427) ¶ 3 (MidPac), Dkt. 112-41 (DX-342) ¶ 3 (Ross Stores), Dkt. 112-97 (DX-398) ¶ 3 (DeWitt), Dkt. 121-39 (DX-343) ¶ 20 (Toyota).

## III.    APL's Claimed Conflicting Evidence

APL asserts the declarations "contain[] statements that are contradicted by documents or testimony in the record." Mot. 5. APL proffers three types of allegedly conflicting evidence. *First*, APL cites documents reflecting a smattering of customer complaints to Matson over a decade, showing, for example, a shipper "was displeased with the customer service it received from Matson." Mot. 6 (citing two emails, dated 2018 and 2020). *Second*, APL cites the deposition testimony of *APL employees*, who offered hearsay testimony regarding what third parties allegedly

told them about Matson's threatening or disparaging conduct.  *See, e.g.*, Mot. 10 (citing deposition transcripts of APL Account Manager Kevin Theberge and APL former General Manager Charlie Hermosa).  *Third*, APL cites *new* declarations from APL witnesses Hermosa and Theberge dated April 25 and 26, 2024.  *See* Dkt. 150 & 150-1.  There, Theberge and Hermosa recount further hearsay from meetings with third parties at which the third parties allegedly related threatening or disparaging conduct by Matson.  *See* Mot. 8 (citing Theberge Decl.) & 13 (citing Hermosa Decl.).  APL cites no instances of any of the third parties contradicting the statements in their respective declarations, each of which was made under penalty of perjury.

APL's brief also asserts that its outside counsel attended one such meeting—with the third party Luen Fung—in April 2023.  Mot. 13.  That meeting was never disclosed, even though it is responsive to Matson's interrogatory asking APL to state "the date(s) . . . and the manner in which the alleged threats were made known to [it]."  Ex. 2 at Inter. No. 2.  APL chose not to depose Luen Fung despite the alleged discrepancy.

## LEGAL STANDARD

"A motion to strike is considered an exceptional remedy and is generally disfavored, and the proponent of such a motion must carry a formidable burden."  *Barnes v. D.C.*, 289 F.R.D. 1, 6 (D.D.C. 2012) (internal quotations and citations omitted); *see Canady v. Erbe Elektromedizin GmbH*, 384 F. Supp. 2d 176, 180 (D.D.C. 2005) ("[C]ourts generally disfavor motions to strike" and "the moving party bears a heavy burden[.]"), *aff'd*, 182 F. App'x 988 (Fed. Cir. 2006).

Rule 37(c)(1) mandates the exclusion of information or witnesses if the party proffering the evidence "fail[ed] to provide information or identify a witness as required by Rule 26(a) or (e). . . unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  Rules 26(a) and (e), in turn, require the disclosure and timely supplementation of "each individual likely to have discoverable information . . . that the disclosing party may use to support its claims

of defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i).

Motions for Rule 37(c)(1) discovery sanctions "must overcome several technical hurdles,"

including a showing that the identity of the at-issue witnesses "[was] not otherwise made known

. . . in earlier stages of th[e] litigation." *G&E Real Est., Inc. v. Avison Young-Washington, D.C.,*

*LLC*, 323 F.R.D. 67, 70 (D.D.C. 2017). Moreover, "a party need not disclose a witness pursuant

to Rule 26(a) if the evidence will be used 'solely for impeachment,' and the witness may testify at

trial even if not disclosed beforehand." *Standley v. Edmonds-Leach*, 783 F.3d 1276, 1281 (D.C.

Cir. 2015) (quoting Fed. R. Civ. P. 26(a)(1)(A)(i)).

Separately, Rule 56(c)(2) permits a party to "object" at summary judgment that "material

cited to support or dispute a fact cannot be presented in a form that would be admissible in

evidence." Fed. R. Civ. P. 56(c)(2). "On summary judgment, however, a district court need not

rely only upon admissible evidence." *Brody v. U. S. Dep't of Just.*, 2023 WL 1511679, at *2 (D.C.

Cir. Feb. 3, 2023). Even though witness declarations are out-of-court hearsay statements, Rule

56(c)(4) permits their submission to support a motion for summary judgment as long as they are

"made on personal knowledge, set out facts that would be admissible in evidence, and show that

the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Finally, "in resolving a motion to strike a 'court uses a scalpel, not a butcher knife,'" striking only

the "improper portions of an affidavit used to support or to oppose a motion for summary

judgment[.]" *Ascom Hasler Mailing Sys., Inc. v. U.S. Postal Serv.*, 815 F. Supp. 2d 148, 162–63

(D.D.C. 2011) (citation omitted).

### ARGUMENT

Motions to strike notoriously "proliferate pages and burden the court unnecessarily,"

*Lockey v. Fudge*, 2022 WL 4285622, at *1 (D.C. Cir. June 1, 2022), and striking evidence on

summary judgment is an "exceptional" and "generally disfavored" remedy, *Barnes*, 289 F.R.D.

at 6.  Federal courts regularly consider third-party declarations submitted in support of motions for summary judgment "regardless of when in the discovery process the motion is filed."  *Ng v. Lahood*, 952 F. Supp. 2d 85, 92 (D.D.C. 2013).  For its part, Matson's disclosures were fulsome and wholly appropriate.  Matson disclosed the declarations as it obtained them starting in April 2023, and (unlike APL) complied with the parties' agreement that all third-party subpoena returns would be shared within five business days.  It also supplemented its initial disclosures *nine times* to incorporate the declarants and their companies.  APL's motion should be denied.

## I.     Matson Fully Complied with Rule 26

APL complains that four declarants (DHX, Pasha, McDonald's, and Ambros) were disclosed too late, and that three of these (Pasha, McDonald's, and Ambros) were not in Matson's Ninth Supplemental Initial Disclosures.  Both arguments are misplaced.

*First*, APL cannot credibly claim "trial by surprise" with respect to the DHX and Pasha declarations, Mot. 19, 21, because both were disclosed *by APL* as material witnesses in APL's *November 2022* initial disclosures.  Ex. 4 at 3–4.  Matson, in turn, reserved the right to identify "whomever Plaintiffs may designate as witnesses" in its initial disclosures.  Ex 13 at 1.  Moreover, APL expressly discussed Pasha in its FAC, FAC ¶¶ 38, 53, and identified "George Pasha of Pasha" as one of the witnesses to Matson's alleged threats in its January 6, 2023 First Supplemented Interrogatory Responses, Ex. 10 at 9.  Several APL witnesses testified about meeting with George Pasha regarding the allegations at issue in this case, including both APL's former CEO Ed Aldridge—on the last day of discovery—and APL's 30(b)(6) witness—after the close of discovery, when Matson sought and obtained an order compelling APL to produce a witness knowledgeable about its Pasha-related allegations.  *See* Dkt. 118-58 (DX-86) (Aldridge Dep. Tr.) 193:13–208:18; Dkt. 87 (ordering APL to "prepare and provide a 30(b)(6) witness for a two-hour deposition to testify about the specifics of any discussion(s) between Pasha and APL representatives alluded to

in paragraph 53 of the amended complaint"); Dkt. 118-10 (DX-15) (APL 30(b)(6) Dep. Tr.) 436:2–

21.  With respect to DHX, Matson disclosed Mr. Butler of DHX in its Ninth Supplemental Initial

Disclosures on October 9, 2023.  Ex. 21 at 9.  APL cannot meet its burden to show these two

parties were "not otherwise made known" to APL during fact discovery.  *G&E Real Est., Inc.*, 323

F.R.D. at 70; *see Elion v. Jackson*, 544 F. Supp. 2d 1, 7 n.9 (D.D.C. 2008) (holding witness's

testimony admissible when party moving to exclude the testimony was "on notice that [the witness]

had discoverable information" and had been "free to depose [the witness] to find out exactly what

she knew about what").  It is preposterous to suggest otherwise on this record.

 *Second*, APL's objection that it was deprived "of any opportunity it may have had to depose

Mr. Butler [of DHX] while in Guam," Mot. 20, is an irrelevant half-truth.  Neither Rule 26 nor any

other rule entitled APL to take a deposition of every declarant Matson proffers on summary

judgment.  The Court permitted each side 20 depositions, and APL "chose to spend [its] limited

depositions on other targets."  *Sterling Nat'l Bank v. Block*, 2018 WL 11200447, at *3 (N.D. Ill.

Apr. 18, 2018) (denying motion to strike declaration on summary judgment).  For APL, that

included a 13-minute deposition of Van Shelly of Nissan Motor Guam Corp, and a deposition of

James Honda of GTW regarding events that allegedly occurred in 2016, outside the statute of

limitations.  Nor did APL use all 20 of its permitted depositions or seek permission before the end

of discovery to take more.  There is no prejudice here, much less prejudice caused by Matson.

 Regardless, it was APL, not Matson, who was "hid[ing]" Mr. Butler of DHX.  Mot. 20.

Mr. Butler's name is nowhere in APL's interrogatory responses; APL first mentioned him as a

purportedly threatened third party during the Rule 30(b)(6) deposition of APL held on Guam *on

September 27, 2023*, two days before the parties left Guam.  Dkt. 118-10 (DX-15) (APL 30(b)(6)

Dep. Tr.) 281:3–10.  If APL's 30(b)(6) representative believed Mr. Butler was threatened, its

<u>REDACTED PUBLIC VERSION</u>

counsel had every opportunity to seek his deposition, or to take it remotely after the parties left Guam.

Matson had every right to protect itself from APL's untimely assertions about Mr. Butler, and to rebut them with admissible declaration testimony. Matson produced Mr. Butler's declaration on October 2, 2023, five business days after it was executed, consistent with the parties' agreement. APL had more than a week before the October 11 close of fact discovery to react, including by taking one of its remaining depositions remotely, as the parties did for other witnesses. APL failed to do so. *See Esquibel v. Peters*, 2008 WL 11390842, at *1 (D.D.C. Nov. 17, 2008) (denying motion to strike notwithstanding plaintiff's claim that "defendant denied him the right to depose" a late-disclosed declarant). Instead, APL waited six months and then moved to depose a different DHX witness, a motion this Court denied. Dkt. 124. The Court explained: "APL was aware of the importance of DHX . . . long before October 2023 and could have taken steps to depose the [witness] during the almost eleven months for fact discovery in this case."[3] *Id.*

*Third*, APL's motion ignores the reason Matson belatedly disclosed witnesses from McDonald's and Ambros: because they were not included in APL's initial disclosures or interrogatory responses, but instead identified by APL witnesses during their depositions on September 6 and 27 and October 11, 2023—the day discovery closed—and in violation of the Court's February 6 and August 11 orders. They also were never added to APL's initial disclosures

---

[3] APL subpoenaed DHX and moved to compel DHX in the Central District of California, without notice to Matson. *See In re Subpoena to Dependable Hawaiian Express, Inc.*, No. 2:23-mc-00141-JLS-PD (C.D. Cal.); *see also* Fed. R. Civ. P. 37(a)(1) (requiring "notice to other parties and all affected persons" in connection with any motion to compel discovery). APL based its motion to compel on an allegation that DHX was the subject of Matson's anticompetitive conduct, despite the fact that DHX is listed nowhere in APL's interrogatory responses, even after this Court twice compelled APL to respond to Matson's interrogatories asking APL to identify everyone it claims Matson "threatened."

or interrogatory responses thereafter, in violation of Rule 26(e) and the Court's February 6, 2023 direction to "generally supplement" interrogatory responses.   Matson did not and could not disclose these witnesses or issue interrogatories or requests for production about them because it did not know APL claimed they were the subjects of Matson's purported exclusionary conduct until after written discovery closed or, in one case, the *very last day of discovery*.   *See* Dkt. 68 (setting February 1, 2023 deadline to serve written discovery).   "It would be an assault on common sense . . . to allow a party to inject new evidence" late in discovery, "but to then prevent the opposing party" from rebutting that evidence.   *Canady*, 384 F. Supp. 2d at 182 (denying motion to strike late-disclosed declaration proffered to rebut "newly discovered evidence").   As for APL's claim that Matson failed to identify "Aduana in its Initial Disclosures," Mot. 10, Matson listed Aduana in its Ninth Supplemental Initial Disclosures, served October 9, 2023 after APL belatedly injected it into the case.   *See* Ex. 21 at 9.   And Matson proffered the Aduana declaration to rebut new facts first raised by APL witnesses in their depositions, consistent with the law of this Court.

Each of these three problems is dispositive of APL's motion to strike the declarations under Rule 26.   But APL's motion also fails because APL overlooks two key provisos of Rule 26(a) and 37(c)(1).   Rule 26(a) by its terms does not apply to evidence used "solely for impeachment," and Matson was permitted to proffer the Declarations of DHX, McDonald's, Ambros, and Pasha—and call the declarants to trial—for purposes of impeaching APL's claims of "threats" and other exclusionary conduct, whether or not they were listed on any party's initial disclosures.   *See Standley*, 783 F.3d at 1281.   And Rule 37(c)(1) sanctions are unavailable if a failure to abide by Rule 26(a) or (e) "was substantially justified or harmless."   Given that APL knew about all of these witnesses—and put their role in this dispute at issue—any failure by Matson to add them to its initial disclosures was both substantially justified and harmless.

## II.      Matson Did Not Fail to Timely Produce Any Declarations

APL complains that the McDonald's, Ambros, and Pasha declarations were produced after the parties' discovery fact cutoff.  Mot. 20–21.  But that has nothing to do with Rule 26, as APL suggests.  It also is not a reason to strike the declarations now.  Courts routinely consider declarations at summary judgment.  "There is no question that Rule 56 contemplates that a movant may submit supporting materials, including affidavits and declarations, along with a motion for summary judgment."  *Ng*, 952 F. Supp. 2d at 92 (denying motion to strike three declarations that were submitted with a summary judgment motion after the close of discovery); *see Johnson v. Shinseki*, 811 F. Supp. 2d 336, 342 (D.D.C. 2011).  APL cites no obligation to produce these rebuttal declarations earlier.  And APL itself relies on declarations, including some disclosed for the first time with its summary judgment papers.

## III.     The Declarations Comply with Rule 56 and All Applicable Evidentiary Rules

APL's arguments seeking to strike the declarations on Rule 56 and evidentiary grounds are even more attenuated, if not objectively baseless.  The declarations comply with the Federal Rules of Civil Procedure, the Federal Rules of Evidence and federal law, and there is no proper basis upon which to even attempt to strike them.

### A.      The Declarations Are Based on Personal Knowledge

Rule 56 provides no basis for striking any of the declarations.  *See* Fed. R. Civ. P. 56(c)(4); *Brody*, 2023 WL 1511679, at *2.  APL wrongly asserts seven of the declarants lack adequate "personal knowledge."  Mot. 22–23, 24.  As an initial matter, Rule 56(c)(4)'s "personal knowledge" standard is deemed met by "[a]n affiant who reviews the business records of the organization that he or she is affiliated with, and who testifies on the basis of information acquired through the performance of his or her official duties," since that person "may be deemed competent by the court to testify as to those records." *Akers v. Beal Bank*, 845 F. Supp. 2d 238, 242 (D.D.C. 2012),

*aff'd*, 2012 WL 4774676 (D.C. Cir. Oct. 2, 2012). In *Akers*, for example, the court permitted declarations on summary judgment where the employee declarant "represent[ed] that she has 'personal knowledge of the facts contained in [her] declaration based on [her] review of the records of [the company], which are made and kept in the ordinary course of its business'"; and that "[i]f called as a witness . . . she 'could and would testify competently' with respect to these business records." *Id.*

That is precisely what the seven challenged declarants—Page Butler (DHX), Matthew LeClair (Cost.U.Less), Janet Harris (Ross Stores), ███████████████ (Toyota), Mark Negri (Macy's), John Burrows (DeWitt), and Dustin Reiman (Fastenal)—did here. Each affirmed they "have personal knowledge of the facts set forth below . . . and if called as a witness could and would testify competently thereto." Dkt. 111-32 (DX-233) ¶ 1 (DHX), Dkt. 112-40 (DX-341) ¶ 1 (Cost.U.Less), Dkt. 112-41 (DX-342) ¶ 1 (Ross Stores), Dkt. 112-86 (DX-387) ¶ 1 (Macy's), Dkt. 112-97 (DX-398) ¶ 1 (DeWitt), Dkt. 113-34 (DX-435) ¶ 1 (Fastenal). The only slightly different formulation is substantially the same. *See* Dkt. 121-39 (DX-343) ¶¶ 1, 5 (Toyota) ("███ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████"). These bases of knowledge are more than adequate. *See Ecological Rts. Found. v. U.S. Env't Prot. Agency*, 541 F. Supp. 3d 34, 49 (D.D.C. 2021) (allowing use of declaration where the declarant "attest[ed] that his declaration [wa]s 'based on [his] own personal knowledge, on information contained in [agency] records . . . or on information supplied to [him] by employees under [his] supervision or employees in other [agency] offices'"); *Elliot v. Fed. Bureau of Prisons*, 2006 WL 5217760, at *6 (D.D.C. Oct. 17, 2006) (finding declaration based on declarant's "own personal knowledge, or on the basis

of information acquired by [him] through the performance of [his] official duties" and through review of "official files and records" met the personal-knowledge requirement (internal quotation marks omitted)).

### B.    The Declarations Are Not Hearsay

APL's assertion that all of the declarations are inadmissible hearsay misreads Rule 56(c)(4), which does "not require[ parties] to produce evidence in a form that would be admissible at trial," so long as the evidence is "capable of being converted into admissible evidence." *Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000); *see also Catrett v. Johns–Manville Sales Corp.*, 826 F.2d 33, 38 (D.C. Cir. 1987) (holding district court correctly considered a letter from a witness on summary judgment since "the substance of the letter is reducible to admissible evidence in the form of trial testimony"); *Richards v. Option One Mortg. Corp.*, 2009 WL 2751831, at *1 n. 3 (D.D.C. Aug. 28, 2009) (explaining hearsay statements may be converted into admissible evidence if a witness with personal knowledge can testify to them at trial). Here, each declarant stated under penalty of perjury that "[i]f called as a witness," he or she "could and would testify competently" to the facts set forth in the declaration, which meets this requirement. *See Akers*, 845 F. Supp. 2d at 242.

APL relies on *White Coat Waste Project v. U.S. Dep't of Veterans Affairs*, 404 F. Supp. 3d 87, 106 (D.D.C. 2019), Mot. 24, but this case does not advance its motion. There, declarations from a party's employees that were "lack[ing] any indicia of personal knowledge or reliability on a variety of matters they offer testimony about and documents they purport to rely on, including email messages allegedly sent to and received by people entirely unassociated with the [employer]" were held inadmissible on summary judgment. *Id.* Here, in contrast, the declarants are individuals with supervisory roles at their companies and their testimony is rooted in personal experiences working in Guam and Hawaii, and in many cases directly with Matson and APL. In

contrast to APL's citation to its employees' second-hand accounts, the declaration testimony that each never personally observed or heard of threatening conduct by Matson is undisputedly percipient testimony, and the testimony would be admissible if offered at trial.

### C.    The Declarations Are Otherwise Admissible Evidence

APL's suggestion that the declarations are irrelevant, Mot. 25, is frivolous.  They belie the "meat and potatoes" APL's claim that Matson threatened third parties.  Nothing could be more relevant.  Equally absurd is APL's contention that the declarations should be excluded because the declarants live in "far-flung" locations outside the "jurisdiction of this Court" such as Texas, Minnesota, California, and Guam.  Mot. 25–26.  Congress has said otherwise.  28 U.S.C. § 1746.

APL's counterfactual presumption that the declarants would not show up to trial because they live far away misstates the case law it cites (Mot. 26)—all of which makes clear that a party seeking exclusion of a declaration on summary judgment must establish the witness *would not* be available.  *See Leupold & Stevens, Inc. v. Lightforce USA, Inc.*, 501 F. Supp. 3d 987, 1023–24 (D. Or. 2020) ("[T]here is no evidence that [the representative] will *not* be available for trial. . . .  Thus, given that [the representative] could testify at trial—and there is no evidence that he will not—the Court will consider his declaration at summary judgment."); *Fraternal Ord. of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 239 (3d Cir. 2016) ("Here, [p]laintiffs identified the third-party declarants, and nothing suggests that those declarants would be unavailable to testify at trial.  That is all that was required to survive that aspect of [d]efendants' motion for summary judgment."); *Vermeer v. Univ. of Del.*, 2024 WL 81291, at *9 n.14 (D. Del. Jan. 8, 2024) ("Plaintiff has identified Jenkins as the third-party declarant, and neither party has suggested that Jenkins will be unavailable to testify at trial.").  APL has not even attempted to do this—and may not on reply. *See In re Asemani*, 455 F.3d 296, 300 (D.C. Cir. 2006) (holding argument raised for first time in reply was waived); *Aenergy, S.A. v. Republic of Angola*, 678 F. Supp. 3d 147, 168 n.5 (D.D.C.

2023) (explaining "the Court does not rely on matters or evidence raised for the first time on reply").  APL cites to *EEOC v. Austal USA, LLC*, 447 F. Supp. 3d 1252, 1262 (S.D. Ala. 2020), Mot. 25, but that case is about hearsay, not competence to testify, and APL has not identified any statement in any declaration that, if repeated *by the declarant at trial*, would be inadmissible, obviating any hearsay issue.  Where, as here, each of the witnesses stated under penalty of perjury that "if called as a witness," they "could and would testify competently" to the facts asserted, Congress's mandate is satisfied.

Finally, APL complains that Matson "served incredibly broad and burdensome third-party subpoenas" and "engag[ed] in meet-and-confer processes in which it exacted" declarations, which declarations were "typically drafted by Matson's counsel."  Mot. 4–5.  APL does not explain why these characterizations, even if true, support its motion to strike in any way.  There is absolutely nothing wrong with meeting and conferring with a subpoenaed party or its counsel and negotiating a scope of document review and production, and the language of a declaration, to satisfy the subpoena.  This is what parties could and should do to comply with Rule 45(d)(1)'s admonition that parties "must take reasonable steps to avoid imposing undue burden or expense" on third-party subpoena targets.  *See Millennium TGA, Inc. v. Comcast Cable Commc'ns LLC*, 286 F.R.D. 8, 11 (D.D.C. 2012) ("The text of Rule 45 makes quite clear that parties and attorneys who issue subpoenas have an affirmative duty to prevent undue burden or expense to the persons subject to the subpoena[.]").

Similarly, "[t]here is nothing unusual or improper about an attorney drafting a witness's declaration, so long as the witness reviews the declaration, agrees with its contents, and has a basis for his or her agreement."  *Luxottica Grp. S.p.A. v. Light in the Box Ltd.*, 2016 WL 6092636, at *4 (N.D. Ill. Oct. 19, 2016).  APL claims the declarations "reflect minimal changes from initial draft

to execution version," Mot. 12–13, but many third parties, through counsel, sent line edits of their draft declarations.  *See* Tyson Decl. ¶ 8 (noting Cost.U.Less and Macy's written edits to drafts). APL also falsely presumes that all drafts were exchanged by email, when, in reality, the declarants and their counsel reviewed and edited drafts on Zoom and via telephone calls, to ensure that the declarations were accurate in content and tone.  Tyson Decl. ¶¶ 8–9.

## IV.    APL's Claims of "Contradicting Evidence" Are Baseless

APL's argument that the declarations should be stricken because they are "contradicted by documents and testimony in the record" is wrong.  Mot. 4–5.  APL cites no legal authority for this proposition, and contrasting evidence is not a basis to strike anything.

Even if it were, APL's "contradictions" reduce to hearsay within a smattering of documents APL construes differently from the actual customers, and the inadmissible hearsay of APL employees reporting second- and third-hand what they heard about Matson.  APL cites no specific instance of a third-party entity contradicting the statements in its declaration.  And there is no lack of irony in APL's proffering double and triple hearsay while simultaneously seeking to strike its customers' first-hand accounts because they "contradict" APL's beliefs.  To the extent APL contends that "[m]ultiple APL attorneys, including two of the undersigned, participated in an April 2023 meeting with Ms. Guevara and Mr. Wong [of Luen Fung], in which they detailed Matson's threats, and discussed this lawsuit," Mot. 13, that is yet more hearsay.  That a lawyer recounts it does not change its nature.  Had APL disclosed either Ms. Guevara or Mr. Wong in its initial disclosures or interrogatory responses as individuals with knowledge of this case, it could have called upon either or both as deposition witnesses or to serve declarations that are not hearsay.  But APL did not, and that failure is no reason to exclude proper declaration evidence.

## CONCLUSION

The Court should deny APL's motion to strike.

**REDACTED PUBLIC VERSION**

Dated:   June 14, 2024

Respectfully submitted,

*/s/ Rachel S. Brass*

Rachel S. Brass, *pro hac vice*
RBrass@gibsondunn.com
Caeli A. Higney, *pro hac vice*
CHigney@gibsondunn.com
Julian W. Kleinbrodt, *pro hac vice*
JKleinbrodt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
(415) 393-8200

Matthew S. Rozen, DC Bar No. 1023209
MRozen@gibsondunn.com
Amalia Reiss, DC Bar No. 241775
AReiss@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500

David Salant, *pro hac vice*
DSalant@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000

*Counsel for Defendants Matson Navigation Company, Inc. and Matson Logistics, Inc.*

27

**REDACTED PUBLIC VERSION**

**CERTIFICATE OF SERVICE**

Pursuant to Local Civil Rule 5.3, I hereby certify that, on June 14, 2024, I caused to be served on Plaintiffs the foregoing Memorandum of Law in Opposition to APL's Objection Pursuant to Rule 56(C)(2) and Motion to Strike via CM/ECF.

Dated:     June 14, 2024                                   */s/ Rachel S. Brass*                        
                                                      Rachel S. Brass, *pro hac vice*