IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN PRESIDENT LINES, LLC,
APL MARITIME, LTD., APL MARINE
SERVICES, LTD.,

              Plaintiffs,

   v.

MATSON NAVIGATION COMPANY,
INC., MATSON LOGISTICS, INC.,

              Defendants.

No. 1:21-cv-2040-CRC

## DEFENDANTS' SUBMISSION ON SEALING OF THE SUMMARY JUDGMENT AND *DAUBERT* RECORD

"After protracted discovery" in this case, this Court found that Plaintiffs American President Lines, LLC, APL Maritime, Ltd., and APL Marine Services, Ltd. (collectively, "APL") "failed to deliver the goods on its allegations" that Matson Navigation Company, Inc. and Matson Logistics, Inc. (together, "Matson") violated the antitrust laws in the U.S.-Guam ocean cargo shipping market, and granted summary judgment to Matson on all of APL's claims. Dkt. 195 ("Op.") at 2. The Court determined that there was not "sufficient admissible evidence in the record to support a jury finding that Matson engaged in conduct that harmed competition in the U.S.-Guam market." *Id.*

The "law presumes that the public is entitled to access the contents of judicial proceedings." *United States v. ISS Marine Servs., Inc.*, 905 F. Supp. 2d 121, 140–41 (D.D.C. 2012). APL has leveled accusations against Matson very publicly, and Matson has successfully defended this case in the open—filing its documents and the depositions of its executives publicly, *see* Suppl. Joint Status Report & Appendix C—while APL still attempts to obstruct public access to the actual evidence filed by the parties.[1] The Court should reject that position: The Disputed Materials are

---

[1] The exhibits at issue are Exhibits 88, 103, 208, 209, 298, 423, and 451 to the March 1, 2024 Declaration of Rachel S. Brass, and Exhibit 143 to the April 26, 2024 Declaration of Kevin N.

stale records that APL seeks to shield merely because they are unflattering. The specific limitations on APL's Guam Service—particularly those that were self-imposed by APL—were a key part of Matson's defense of this case, and none of the materials at issue here overcome the presumption of public access under *United States v. Hubbard*, 650 F. 2d 293 (D.C. Cir. 1980). As with the open hearing the Court held and the public opinion it issued, "[w]hen parties call on the courts, they must accept the openness that goes with subsidized dispute resolution by public (and publicly accountable) officials." *Hyatt v. Lee*, 251 F. Supp. 3d 181, 185 (D.D.C. 2017) (quotation marks omitted)).

## BACKGROUND

Since the beginning of discovery, APL has designated nearly every single document it produced as "Highly Confidential – Attorneys' Eyes Only." Prior to filing its summary judgment and *Daubert* motions, Matson challenged many of APL's designations under the parties' Protective Order, but APL largely ignored Matson's challenge. *See, e.g.*, Dkt. 134 at 2. As a result, on March 1, 2024, Matson filed 358 of the exhibits in support of its summary judgment papers provisionally under seal pursuant to APL's overbroad confidentiality designations, redacting all reference to those materials in its briefing. *See* Dkt. 115. Matson opposed APL's subsequent motion to maintain 273 of those documents under seal (*see* Dkts. 133, 134) because the documents did not meet the *Hubbard* standard for sealing.

As briefing unfolded, the Court deferred sealing disputes until after the Court ruled on the parties' cross-motions for summary judgment. Minute Order (Apr. 29, 2024). After a public hearing, the Court granted summary judgment for Matson on each of APL's claims because APL failed to offer "sufficient admissible evidence in the record to support a jury finding that Matson

---

Dorn. Also at issue are certain portions of the expert report filed by APL (together with the exhibits at issue, the "Disputed Materials"). *See* Dkt. 118-9 (Warren-Boulton Rpt.). Following meet and confer, the parties have reached tentative agreement as to the sealing of the of the other exhibits in the record. The parties have filed a Supplemental Joint Status Report concurrent with this submission. Matson reserves the right to challenge any motion by APL to maintain under seal third-party information that such third party does not seek to seal.

engaged in conduct that harmed competition in the U.S.-Guam market." Op. at 2. The Court also ordered the parties to meet and confer on the appropriateness of sealing the materials previously provisionally filed under seal. *See* Dkt. 194.

Matson met-and-conferred with APL four times and sent scores of emails before, during, and after those meetings to try to reach a resolution. Through that process, Matson and APL agreed to file publicly 361 exhibits. *See* Suppl. Joint Status Report & Appendices A, C. And while Matson does not seek to seal any of its own records nor its employees' testimonies, it has stipulated to APL's request to seal or redact 33 exhibits that at least arguably implicate commercially or personally sensitive information. Suppl. Joint Status Report & Appendix B. The parties have been unable to agree on the proper scope of sealing for the Disputed Materials:

- Matson Exhibits 88 and 103 are 2019 APL lobbying communications about the MSP subsidy. APL seeks to maintain these documents, which include third-party communications, under seal.

- Matson Exhibits 208 and 209 are 2020 APL email chains concerning vessel acquisition. APL seeks to partially redact these documents.

- Matson Exhibit 298 is a 2021 APL email chain between an APL employee and a representative of a third-party logistics provider. APL seeks to partially redact this document.

- Matson Exhibit 417 is a January 2021 APL "Weekly Trade Report" on the Guam trade. APL seeks to partially redact this document.

- Matson Exhibit 423 is a 2021 APL email chain discussing the Guam trade and employee performance. APL seeks to partially redact this document.

- APL Exhibit 143 is a 2020 APL email chain and attachment containing Alaska trade information dating back to 2015. APL seeks to maintain this document under seal. Matson Exhibit 451 is the deposition transcript of former APL employee Eugene Makarin, in which he discusses information contained in APL Exhibit 143. APL seeks to partially redact this transcript.

- Paragraph 121 and Exhibits 10, 11, and 12 of the Warren-Boulton Report include cost data that is over five years old. *See* Dkt. 118-9 at 53–54, 117–19.

Matson now moves to make all of these materials part of the public record.

## ARGUMENT

The D.C. Circuit has endorsed a "strong presumption in favor of public access to judicial proceedings." *Hardaway v. D.C. Hous. Auth.*, 843 F.3d 973, 980 (D.C. Cir. 2016) (quotation marks omitted). In determining whether documents are appropriately filed under seal, courts in this Circuit consider six "*Hubbard*" factors:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996); *see also Hubbard*, 650 F.2d at 317–22. Parties who oppose unsealing bear the burden of overcoming this strong presumption "with specific reasons." *Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268, 1278 (D.C. Cir. 1991); *see also ISS Marine Servs., Inc.*, 905 F. Supp. 2d at 140–41 (party arguing against disclosure must "demonstrate the *absence* of a need for public access"). Because the *Hubbard* factors weigh in favor of public access, APL cannot carry its burden.

**A.    The need for public access favors the unsealing of the materials.**

The first *Hubbard* factor derives from the long-standing belief that public access to judicial records "serves the important function[] of ensuring the integrity of judicial proceedings." *Hubbard*, 650 F.2d at 314–15. "Thus, there is a strong public interest in the disclosure of documents that are or may be relied on in a judicial decision." *FTC v. Match Grp. Inc.*, 2023 WL 3181351, at *9 (D.D.C. May 1, 2023).

Here, the Disputed Materials APL "seeks to keep under seal" are exhibits and information that Matson filed in support of its summary judgment and *Daubert* motions, and "[a]s such, have been submitted with the explicit goal of influencing judicial decision-making, which militates against allowing them to remain sealed." *Match Grp.*, 2023 WL 3181351, at *9. As numerous courts in this Circuit have held when addressing this first factor, "there is a strong presumption of public access to documents that a litigant submits with the intention that the court will rely on

them." *United States v. All Assets Held at Bank Julius Baer & Co.*, 520 F. Supp. 3d 71, 85 (D.D.C. 2020).

The court's decision in *Herron v. Fannie Mae*, 2016 WL 10677615 (D.D.C. June 20, 2016), is instructive. In that case, like this one, the court noted that "the parties agreed to unseal the Court's Opinion without any redactions," and the opinion "contains multiple references and citations to the parties' briefs . . . as well as to the summary judgment record." *Id.* at *3. Accordingly, the first factor weighed in favor of public access because "[t]hese materials must be available in their entirety for the public to consider and analyze the Court's reasoning in this case." *Id.* The fact that the Court "did not expressly rely on these exhibits in its published opinion" does not tip the scales in favor of sealing because "the public has a transparency interest in knowing what record evidence the Court saw fit to exclude from its explanation of the reasons underlying its ultimate decision." *Abdelhady v. George Washington Univ.*, 2024 WL 2888768, at *2 (D.D.C. May 7, 2024) (quotation marks omitted). This case has generated media attention[2] and the public has the same interest here. Accordingly, the first Hubbard factor weighs heavily in favor of public disclosures.

**B.      The public has access to some of the information in the materials.**

The second factor—the extent of previous public access to the sealed information—weighs in Matson's favor. "Generally, when much of the critical information is already in the public forum, this factor weights in favor of greater disclosure." *In re Application for Access to Video Exhibits*, 575 F. Supp. 3d 101, 109 (D.D.C. 2021) (quotation marks and alterations omitted). APL cannot show that the bulk of the information contained in the Disputed Materials is not already public, including this Court's unsealed opinion and exhibits that were filed on the public docket or that the parties have agreed should be unsealed. *See All Assets Held at Bank Julius Baer*, 520 F. Supp. 3d at 83 (while "[t]he public has not previously had access to these specific deposition

---

[2] *E.g.*, Mike Scarcella, *Rival of Container Shipper Matson Can Proceed with Antitrust Lawsuit*, REUTERS (Oct. 3, 2022), https://bit.ly/4jnWECX (last visited Apr. 9, 2025); PACIFIC DAILY NEWS, *Judge Rules in Favor of Matson in APL Antitrust Lawsuit* (March 21, 2025), https://bit.ly/42AUTwG (last visited Apr. 9, 2025).

excerpts. . . . a considerable amount of the information included in those excerpts is in the public domain"). Rather, the Disputed Materials contain information about APL's Guam service that at most adds color to information already in the public domain.

To illustrate, APL seeks to keep under seal Exhibits 208 and 209 because they contain information about APL's vessels. But that information is readily available online. *See, e.g.*, CMA CGM, APL ISLANDER, https://bit.ly/3R70owL (last visited Apr. 8, 2025). Similarly, APL seeks to shield its exhibits about lobbying, including communications with public officials. *See* Exhibits 88 and 103. But APL's lobbying activity is discussed by the Court in its opinion, Op. at 45, and is detailed in a publicly filed declaration from APL's then-President, *see* Matson Exhibit 447. Similarly, APL seeks to maintain under seal critiques of its Guam service from both customers in Guam and APL executives (Exhibits 298, 417, 423), regarding which myriad documents have been publicly filed, *e.g.*, Matson Ex. 19 (Mensing Dep. Tr.) at 170:2–17, 188:12–22 (discussing price hesitancy for customers considering switching to APL); Matson Ex. 233, at -0004 (referring to APL as "Always Plan Late"). Accordingly, the second factor counsels in favor of unsealing.

**C.      APL's objection to unsealing should not be given any weight.**

While *Hubbard* generally "provides broader protection when a third party's privacy or property rights are at issue and that third party objects," "where, as here, the only party to object is the [plaintiff], courts in this district have concluded that this factor weighs in favor of disclosure." *U.S. v. Munchel*, 567 F. Supp. 3d 9, 18 (D.D.C. 2021) (quotation marks omitted). "Given the lack of third-party objection" to unsealing the Disputed Materials, "this factor favors disclosure." *ICC Eval. Serv., LLC v. Int'l Ass'n of Plumbing & Mech. Offs., Inc.*, 2022 WL 2785985, at *6 (D.D.C. July 15, 2022).

This is particularly true because APL is responsible for bringing the Disputed Materials into the case. It injected lobbying and quality of service into this case. *See* Dkt. 10 (FAC) ¶¶ 33, 39-40, 59. It likewise advanced a disparagement theory that implicated its own public statements about its ability to maintain its Guam service. *Id.* ¶ 5. In doing so, APL had to have known that its allegations would be tested. That includes through records underscoring the truthfulness of

Matson's alleged comments—documents like Exhibits 88 and 103—that would eventually become evidence.  For the same reasons, APL knew that information about its costs, such as the (dated) information in the disputed sections of the Warren-Boulton report, would be relevant to its claim for millions in dollars of alleged damages.  So too for information about APL's Alaska business (*e.g.*, APL Exhibit 143), which played a "surprising starring role in this Guam-focused case," Op. at 34, and about which APL filed its own summary judgment motion.  It would be unfair for APL to be allowed to besmirch Matson in open court only to then shield from the public the evidence disabusing its allegations: having "call[ed] on the courts" to decide its claims, APL must "accept the openness that goes with" public resolution.  *Hyatt*, 251 F. Supp. 3d at 185 (quotation marks omitted).

**D.    No property or privacy interests favor sealing and no litigation prejudice would result from public disclosure.**

The fourth and fifth factors—the strength of any property and privacy interests asserted and the possibility of prejudice to those opposing disclosure—"are interrelated," *Am. Pro. Agency, Inc. v. NASW Assurance Servs., Inc.*, 121 F. Supp. 3d 21, 25 (D.D.C. 2013), and weigh in favor of unsealing.

APL does not have a strong privacy or property interest in the information it seeks to maintain under seal.  Some of the Disputed Materials—Exhibit 298, which shows a third-party complaint about APL's service, and Exhibit 423, which contains emails regarding personnel issues—could not possibly involve information over which APL maintains a strong privacy or property interest since "[r]eputational harm alone is insufficient" under *Hubbard*.  *Bond ex rel. K.M. v. Friendship Pub. Charter Sch. Bd. of Trustees*, 2024 WL 3631313, at *2 (D.D.C. Aug. 2, 2024) (quotation marks omitted).  Moreover, most of the information in the Disputed Materials is four to ten years' old and, therefore, so stale that its disclosure would not impact APL's competitive standing.    And APL has offered nothing more than conclusory statements implying "a generalized . . . financial harm," which is insufficient to overcome the presumption in favor of public access.  *ICC Eval. Serv.*, 2022 WL 2785985, at *5; *id.* at *7 (finding unsupported argument

that the redacted information "contains sensitive business information and trade secrets, specifically [party's] internal processes and financial records" did not weigh in favor of sealing). For example, the cost data dating back to 2015 (Warren-Boulton Rpt. ¶ 121 & Exs. 10-12) cannot possibly implicate any competitively sensitive information in 2025. Furthermore, all of the Disputed Materials "reveal very little extra information" than what has already been disclosed in APL's lawsuit and this Court's public opinion—"the genie is already out of the bottle." *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 95 (D.D.C. 2014). Thus, these disputed documents would not further disrupt privacy or property interests that APL has not already made public in this action.

Nor has APL shown, as it must, that it will suffer "legal prejudice—i.e., harm in future litigation"—rather than general reputational harm or inconvenience from disclosure of the Disputed Materials. *Zapp v. Zhenli Ye Gon*, 746 F. Supp. 2d 145, 150 (D.D.C. 2010); *see also Jackson v. Starbucks Corp.*, 2022 WL 888180, at *2 n.1 (D.D.C. Mar. 25, 2022) ("fifth factor inapplicable" where party seeking leave to file under seal "[did] not identify any harm to its interests in future litigation that would flow from release of" the information); *United States ex rel. Durham v. Prospect Waterproofing, Inc.*, 818 F. Supp. 2d 64, 68–69 (D.D.C. 2011) (fifth factor "resolve[d] . . . in favor of lifting the seal" where party "[did] not explain how unsealing would lead to prejudice in future litigation"). APL failed to identify any potential legal prejudice in its initial motion to file these materials under seal, *see* Dkt. 133, and it still has not done so. "[A]morphous claim[s]" of "nondescript property and reputational interest are not substantial and do not weigh in favor of sealing" under *Hubbard*. *Zapp*, 746 F Supp. 2d at 150. Therefore, the fourth and fifth factors also weigh in favor of unsealing the Disputed Materials.

**E.    Matson explicitly intended the Court to rely on the materials in adjudicating its summary judgment motion.**

The sixth *Hubbard* factor addresses the purpose for which the documents were introduced. *Hubbard*, 650 F.2d at 321. This factor favors disclosure where, as here, "the parties explicitly intended for the Court to rely on the sealed materials in adjudicating their dispute." *True the Vote*, 2024 WL 2803332, at *10 (quotation marks and alterations omitted). Courts in this Circuit

routinely find that the sixth *Hubbard* factor weighs in favor of disclosure where a party has filed the relevant documents in support of briefing on a motion for summary judgment.  *See, e.g.*, *Thomas v. Moreland*, 2024 WL 2846744, at *2–3 (D.D.C. June 4, 2024); *All Assets Held at Bank Julius Baer*, 520 F. Supp. 3d at 85–86; *Hyatt*, 251 F. Supp. 3d at 186; *Herron*, 2016 WL 10677615, at *4; *Zapp*, 746 F. Supp. 2d at 151.  Documents that, as here, were "used by the parties moving for, or opposing, summary judgment, should not remain under seal absent the most compelling reasons."  *ICC Eval. Serv., LLC*, 2022 WL 2785985, at *7 (quotation marks omitted).  Whether those document were cited by the Court in its opinion is not dispositive, *Thomas*, 2024 WL 2024 WL 2846744, at *3, because "without access to the sealed materials, it is impossible to know which parts of those materials persuaded the court and which failed to do so (and why)," *All Assets Held at Bank Julius Baer*, 520 F. Supp. 3d at 85–86 (quotation marks and alteration omitted).  *See also Hyatt*, 251 F. Supp. 3d at 184 ("The public interest in these documents is heightened because they allow the public to understand the rulings as well as the contours of the disputes between the parties.").[3]

As discussed above, there is no compelling reason to maintain under seal the Disputed Materials, all of which are relevant to the "central claims of the litigation."  *Guttenberg*, 26 F. Supp. 3d at 96 (quotation marks omitted).  These documents and information are cited in the parties' statements of undisputed facts and responses thereto and were submitted with the intent that the Court rely on them in making its summary judgment decision.  *See, e.g.*, Matson SUMF (Dkt. 116-1) ¶ 32 (Ex. 88), ¶ 35 (Ex. 103), ¶ 57 (Exs. 208, 209), ¶ 68 (Ex. 298), ¶ 152 (Ex. 417), ¶ 157 (Ex. 423); *see also* Dkt. 164-1 APL Resp. to PSUF ¶ 229 (APL Ex. 143); *id.* PSUF ¶ 266 (Matson Ex.

---

[3] As the D.C. Circuit pointed out in *Cable News Network v. FBI*, the *Hubbard* court found that this factor weighed against disclosure only because the "only relevance to the proceedings" of the sealed documents at issue "derived from the defendants' contention that many of them were *not* relevant to the proceedings," and therefore they were "not specifically referred to or examined upon during the course of the original criminal proceedings."  984 F.3d 114, 120 (D.C. Cir. 2021) (quotation marks omitted).  That is not the case here, where Matson and APL filed the Disputed Materials precisely because they *were* relevant to the Court's consideration of the summary judgment motions.

451); *id.* ¶ 267 (Warren-Boulton Rpt.). They are also part and parcel with documents relied on by the Court in its summary judgment decision. For example, Exhibits 88 and 103 (the lobbying documents) are of a piece with the Court's finding that "APL itself has repeatedly acknowledged that it needs MSP payments to keep serving Guam." Op. 45. APL's performance in the Guam trade, at issue in Exhibits 298, 417, and 423, was a point of contention between the parties, *see* Dkt. 164-1 (PSUF) ¶¶ 109-117, and addressed by the Court repeatedly throughout its opinion, *see, e.g.*, Op. at 28 ("For example, internal Home Depot documents suggest that its employees were reluctant to ship large volumes of cargo with APL because of APL's slower and less reliable service rather than any potential retaliation by Matson."); *id.* at 55 (noting that even with higher rates, Matson's speed and reliability kept customers that otherwise tried to work with APL). Exhibits 208 and 209, which discuss vessel acquisition, are similarly related to APL's performance, as well as the Court's discussion of high costs being a barrier to entry. *See* Op. at 17. And APL put the Alaska trade—at issue in APL's Exhibits 143 and 451, as well as Ex. 10, 11, and 12 to the Warren-Boulton Report—at the forefront of its claims ostensibly about the Guam trade. *See* Op. at 34–42.

All of these documents speak to APL's engagement with its customers, its ability to service the Guam trade, its attempts to lobby Congress, and APL's Alaska business, and all provide further context to and support the Court's correct conclusion that APL's failures in the Guam trade were its own, not the result of any anticompetitive actions by Matson. Accordingly, the sixth *Hubbard* factor weighs in favor of unsealing the Disputed Materials.

## CONCLUSION

The Court should unseal the Disputed Materials. Matson respectfully requests that the Court direct the parties to file public copies of the Disputed Materials, as well as copies of Matson's March 1, 2024 and June 14, 2024 filings and APL's April 26, 2024 and July 5, 2024 filings with the parties agreed-upon redactions, within 7 days of the Court's final order concerning sealing.

Dated:   April 10, 2025

Respectfully submitted,

*/s/ Rachel S. Brass*

Rachel S. Brass, *pro hac vice*
RBrass@gibsondunn.com
Caeli A. Higney, *pro hac vice*
CHigney@gibsondunn.com
Julian W. Kleinbrodt, *pro hac vice*
JKleinbrodt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
(415) 393-8200

Matthew S. Rozen, DC Bar No. 1023209
MRozen@gibsondunn.com
Amalia Reiss, DC Bar No. 241775
AReiss@gibsondunn.com
Harry R.S. Phillips, DC Bar No. 1617356
HPhillips@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1700 M Street N.W.
Washington, D.C. 20036
(202) 955-8500

David Salant, *pro hac vice*
DSalant@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000

*Counsel for Defendants Matson Navigation
Company, Inc. and Matson Logistics, Inc.*

## CERTIFICATE OF SERVICE

Pursuant to Local Civil Rule 5.3, I hereby certify that, on April 10, 2025, I caused to be served on Plaintiffs the foregoing submission via CM/ECF.

Dated:     April 10, 2025                              */s/ Rachel S. Brass*
                                                        _____

                                                        Rachel S. Brass, *pro hac vice*