UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AMERICAN PRESIDENT LINES, LLC**, *et al.*,<br><br>             Plaintiffs,<br><br>             v.<br><br>**MATSON NAVIGATION COMPANY, INC.**, *et al.*,<br><br>             Defendants. | Case No. 21-cv-2040 (CRC) |

**OPINION AND ORDER**

During summary judgment briefing in this case, the Court permitted the parties to file potentially sensitive material provisionally under seal and deferred ruling on sealing until after the Court's summary judgment decision. See Minute Order of April 29, 2024. The Court then granted summary judgment to Defendants. See Mem. Op. of March 11, 2025 ("Summ. J. Op."). It also directed the parties to confer regarding sealing and, failing agreement, to brief any disputes. See Order of March 11, 2025. The parties agreed as to much of the voluminous record in this case. The Court appreciates their cooperation and will adopt their proposed stipulation. There are, however, still some documents at issue. For the reasons given below, the Court will keep sealed some of the disputed documents and unseal others. It will also retain the seal on documents produced by third parties who object to disclosure.

**I.    Legal Standard**

There is a "strong presumption in favor of public access to judicial proceedings." Hardaway v. D.C. Hous. Auth., 843 F.3d 973, 980 (D.C. Cir. 2016). A district court has "wide discretion" over whether to seal individual records. Abdelhady v. George Wash. Univ., 89 F.4th

955, 958 (D.C. Cir. 2024) (quotation marks omitted). The D.C. Circuit has identified six "Hubbard" factors to guide a court's exercise of that discretion:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to the disclosure, and their identity; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

Id. (citing United States v. Hubbard, 317–22 (D.C. Cir. 1980)).

## II. Analysis

APL asks that eight summary-judgment exhibits be kept sealed in part or in full. Matson opposes sealing. The parties also ask that the Court keep third-party records under seal until they have a chance to be heard on sealing. The Court will begin with APL and Matson's records before turning to the third-party records.

### A. APL and Matson's Records

APL seeks to redact in part or full eight exhibits:

1. Plaintiff's Summary Judgment Exhibit ("PSJ") 143, an email chain and several spreadsheets with financial information about APL's operations in Alaska between 2015 and 2019;

2. Defendant's Summary Judgment ("DSJ") 88, a document regarding APL's lobbying strategy;

3. DSJ 103, an email chain discussing APL's lobbying efforts;

4. DSJ 208, an email chain discussing ship specifications;

5. DSJ 209, an email chain discussing ship specifications;

6. DSJ 423, an email chain discussing shipping details and an APL employee's performance;

7. Dr. Warren-Boulton's expert report's discussion of APL financial information from 2017 to 2019 and several associated exhibits; and

8. Dr. Langer's expert report's discussion of APL customer information from 2022.

2

Matson opposes sealing any of these records and does not request any further records be kept sealed.[1]

The Court will begin with some general observations about the first, third, and sixth Hubbard factors, which do not turn on the specific record at issue. The first Hubbard factor, the need for public access, supports disclosure here but not especially strongly. The Court did not rely on any of the disputed records in its opinion granting summary judgment to Matson. Contrast EEOC v. Nat'l Children's Ctr., Inc., 98 F.3d 1406, 1411 (D.C. Cir. 1996) ("[T]here is a need for public access . . . where the documents at issue are specifically referred to in the trial judge's public decision." (cleaned up)). Nor is the government a party to this case, where accountability concerns support unsealing. See Friedman v. Sebelius, 678 F. Supp. 2d 54, 58 (D.D.C. 2009). That said, there undeniably is some public interest in disclosing the disputed records. See Vanda Pharms, Inc. v. FDA, 539 F. Supp. 3d 44, 53 (D.D.C. 2021) ("[T]he public also has a transparency interest in knowing what record evidence the Court saw fit to exclude from its [opinion]."). But the point here is that the public interest is not as strong in this case as

---

[1] APL also noted in a footnote that it was "reserv[ing] its rights as to DSJ [298]," an email chain with some text in a foreign language. See APL Sealing Br. at 5 n.3. The Court is confused by that reservation—the Court solicited briefing on sealing not for the parties to preserve issues but to dispute them. APL's footnote does claim that the email is "irrelevant," but the email's subject line is "Gripe," and its English-language contents appear to be someone complaining about doing business with APL. DSJ 298 at 4. That email was then forwarded to an APL employee. Id. Given that Matson's theory of this case is that APL's poor service and customer frustration resulted in APL's poor performance in the U.S.-Guam shipping market, this email appears to be relevant. See Summ. J. Op. at 4–5. Without more from APL, the Court will order DSJ 298 unsealed.

Matson also represented that APL wishes to seal DSJ 417, a weekly trade report on the Guam trade, and DSJ 451, a deposition transcript. Matson Sealing Br. 3. APL's opening brief, however, makes no mention of either exhibit. APL's reply brief mentions DSJ 417 (not DSJ 451), but arguments raised for the first time in a reply brief are forfeited. Steel Joist Inst. v. OSHA, 287 F.3d 1165, 1166 (D.C. Cir. 2002). The Court will therefore order DSJ 417 and DSJ 451 unsealed as well.

it might be in others.  Friedman, 678 F. Supp. 2d at 58 ("There is a stronger presumption of transparency in some judicial proceedings than in others.").

Next, the third Hubbard factor is neutral here.  That factor is intended to provide greater protection to third parties who object to unsealing their private records.  United States v. Munchel, 567 F. Supp. 3d 9, 18 (D.D.C. 2021).  Here, the only party that objects to unsealing the disputed records is APL, the plaintiff who initiated this case.  As such, this factor is neutral and "does not weigh against release."  Id.

Finally, the sixth Hubbard factor cuts in both directions.  That factor "favors disclosure where the parties explicitly intended the Court to rely on the sealed materials in adjudicating their dispute."  Vanda Pharms., 539 F. Supp. 3d at 57 (cleaned up).  Here, the parties introduced the disputed documents to influence the Court's summary judgment decision, tipping this factor in favor of unsealing.  But when, as here, "a sealed document didn't affect a judicial decision," the sixth Hubbard factor "can be the most important element cutting against disclosure."  CNN, Inc. v. FBI, 984 F.3d 114, 120 (D.C. Cir. 2021) (cleaned up).  Still, given that the parties introduced these records to influence the Court's ruling, the Court finds that this factor only slightly favors keeping the records under seal.

To sum up, these three generally applicable Hubbard factors are largely a wash.  That leaves three more factors: prior access, property or privacy interests, and prejudice.  Given that the default presumption is in favor of public access, the Court will seal records only if APL can make a sufficiently strong showing on these three factors as to each of the disputed records.  The Court will divide those records into three categories: (1) APL's financial information; (2) APL's lobbying records; and (3) APL's email discussion of ship specifications.

*1. Financial Information*

The Court will partially unseal APL's financial information. Four records contain APL financial information: the two expert reports and PSJ 143 and DSJ 423, which are both email chains. As best the Court can tell, Matson does not dispute that this financial information was not previously disclosed to the public. See Matson Sealing Br. 5. To support sealing this information, APL relies on a previously filed declaration submitted by APL General Counsel Patricia O'Neill. That declaration, however, paints in extremely broad strokes and offers only general assertions that revealing financial information to competitors could enable them to gain the upper hand over APL. See, e.g., O'Neill Decl. ¶ 3. It does not discuss any individual record. And critically, it gives no explanation of how a competitor could use some of the old financial information in the records against APL *today*. For example, PSJ 143 contains financial data stretching back to 2015. How can someone use ten-year-old information against APL? The declaration is silent.

Still, several factors support at least partially sealing APL's financial information. For one, APL has strong privacy interests in its financial information. And as it explains, the U.S.-Guam market is a two-firm market, so disclosing financial information poses an unusually serious risk of competitive harm. The Court is also mindful that the staleness of some of the financial information is a result of the lengthy discovery process in this case.

Accordingly, the Court will order unsealed financial information that is more than seven years old, which adequately balances the public interest in disclosure with APL's interests. That means that PSJ 143 and Dr. Warren-Boulton's report shall be unsealed, except to the extent that the parties agreed that materials contained within those exhibits can be sealed or the exhibits contain financial information from January 1, 2018, onwards. Subparagraphs e–g of Paragraph

144 of Dr. Langer's report will remain sealed, as those subparagraphs discuss financial information from 2022. DSJ 423 shall remain sealed in full, as it discusses financial information from 2021, and the rest of the email is an irrelevant discussion of an individual employee's performance on a purely internal, administrative task that would infringe that employee's privacy if disclosed.

      2. *Lobbying Records*

The Court will seal DSJ 88 and unseal DSJ 103, the two records containing information related to APL's lobbying efforts.

First, DSJ 88 will remain sealed in full because it describes in detail APL's ongoing efforts to lobby Congress in response to Matson's efforts to end APL's MSP subsidies. It includes talking points and an outreach strategy which, if disclosed, could enable Matson to pursue its own lobbying campaign more effectively at the expense of APL. That risk of prejudice overcomes the public interest in disclosure in this case. The Court therefore will keep DSJ 88 under seal.

Next, DSJ 103 will be unsealed because much of it is already public. The exhibit notes that Matson was planning to submit an amendment to a bill to end APL's MSP subsidies and acknowledges that APL needs those subsidies to continue servicing Guam. Both points are already public record and were discussed in the Court's summary judgment opinion. Summ. J. Op. at 45. APL also has not identified any prejudice that would result from disclosing this email. And while APL has a general privacy interest in its emails, that interest is not enough to overcome the other Hubbard factors that support disclosure.

### 3. Ship Specifications

That leaves DSJ 208 and 209, two email threads between APL employees discussing ship specifications. APL seeks to redact information regarding its selection process for obtaining new ships. APL Sealing Br. at 5. Matson claims that some of the information is already public, through APL websites describing some of their ships. Matson Sealing Br. at 6. But that website does not disclose APL's criteria for *future* vessels. Disclosing that kind of sensitive information to APL's only competitor could advantage Matson in the market, a risk that outweighs the interest in disclosing these idiosyncratic criteria that are of minimal relevance to the issues in this case. As a result, the Court will keep DSJ 208 and 209 partially sealed to the extent they contain information regarding APL's criteria for obtaining ships. To the extent they discuss anything else, including any ship specifications that are publicly available, the Court will unseal them.

### B. Third-party records

Finally, the Court will permit third-party records to remain under seal to the extent that the third parties who produced them object to public filing. These third parties have significant privacy interests, see Munchel, 567 F. Supp. 3d at 18, and there is a reduced public interest in disclosure because the Court did not rely on these materials in its opinion. The Court also finds that the voluminous public record of APL and Matson's records is more than enough to educate the public on these proceedings.

## III. Conclusion and Order

For these reasons, it is

**ORDERED** that the Stipulation on Sealing of the Summary Judgment, *Daubert*, and Motion to Strike Record is GRANTED. It is further

**ORDERED** that the parties shall re-file all materials in Appendices A– C of the Stipulation on Sealing of the Summary Judgment, *Daubert*, and Motion to Strike Record, the

7

materials unsealed in the foregoing paragraph and the related portions of the parties' March 1, 2024, April 26, 2024, June 14, 2024, and July 5, 2024 Summary Judgment, *Daubert*, and Motion to Strike filings by May 23, 2025.  It is further

**ORDERED** that PSJ 143; Dr. Warren-Boulton's report and its exhibits; DSJ 103; DSJ 298; DSJ 417; and DSJ 451 shall be UNSEALED except to the extent that they contain materials that the parties agreed may be sealed in the parties' stipulation or APL financial information from January 1, 2018, onwards.  The parties shall file public copies of those exhibits on the public docket and any related portions of the parties' related motions filings by May 23, 2025.  It is further

**ORDERED** that DSJ 208 and 209 shall remain SEALED to the extent they discuss APL criteria for obtaining vessels.  The parties shall re-file public versions of the exhibits and any related portions of the parties' related motions filings by May 23, 2025. It is further

**ORDERED** that Subparagraphs e–g of Paragraph 144 of Dr. Langer's report; DSJ 88; DSJ 423; and all records submitted by third parties who object to public disclosure shall remain SEALED.

**SO ORDERED.**

_____<br>
CHRISTOPHER R. COOPER<br>
United States District Judge

Date: <u>May 13, 2025</u>